1 J. Kevin Benjamin, Esq.
2 Theresa Unkrur, Esq.
  BENJAMIN LEGAL SERVICES
3 1016 W. Jackson Boulevard
  Chicago, IL 60607-2914
4 T. 312-853-3100
  F. 312-577-1707
5

6 **UNITED STATES DISTRICT COURT**

7 **NORTHERN DISTRICT OF ILLINOIS**

8 **EASTERN DIVISION**

9

10                                              CIVIL ACTION

11 SUPER PAWN JEWELRY & LOAN, L.L.C.           FILE NO. _____

12 D/B/A/ GEMRUSH,

13                          Plaintiffs          JURY TRIAL DEMANDED

14         vs.

15                                              1.  NEGLIGENCE

16 AMERICAN ENVIRONMENTAL ENERGY,              2.  FEDERAL SECURITIES FRAUD

17 INC.; BRENT BREWER., JOHN MONTAGUE,         3.  COMMON LAW FRAUD
                                               4.  CONVERSION
18 STEVEN BYLE, VIRGINIA CHA WALTER           5.  BREACH OF CONTRACT

19 O'BRIEN, WILLIAM MCMANES,                   6.  CONSPIRACY
                                               7.  BREACH OF FIDUCIARY DUTY
20 CHRISTOPHER WILSON, HAGLUND &               8.  PROMISSORY ESTOPPEL

21 PAULSEN, P.C., RANDY DREW, ALAN             9.  BREACH OF DUTY OF GOOD FAITH AND
                                                   FAIR DEALING
22 SINDERMAN, QUICKSILVER STOCK                10. VIOLATION OF ILLINOIS CONSUMER
                                                   FRAUD AND DECEPTIVE BUSINESS
23 TRANSFER, L.L.C.,  WEAVER & MARTIN,             PRACTICES ACT

24 L.L.C., MALONE BAILEY, L.L.P, TD            11. CONSTRUCTIVE TRUST
                                               12. SPECIFIC PERFORMANCE
25 AMERITRADE, INC.                            13. DECLARATORY JUDGMENT

26                          Defendants.

27 _____

28 _____

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

1

2

### SUMMARY OF THE CASE

3

4

5

6

7

Defendant American Environmental Energy, Inc. ("AEEI") is a "penny stock" company whose securities trade over the counter on the "pink sheets." AEEI has a recent history of civil and criminal fraud relating to the sale of its securities. Plaintiff Super Pawn Jewelry & Loan, LLC, d/b/a Gemrush ("Gemrush") is a small Illinois business, owned and operated by Mr. Lawrence Glassman.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Plaintiff owned 1,000,000 shares in The Conscious Company, Inc. ("CCCX"), a dormant "shell" company. When CCCX was subsequently merged into AEEI, AEEI and its control persons negligently failed to perform the rudimentary due diligence necessary to learn that Plaintiff was a CCCX shareholder, and therefore entitled to receive 1,000,000 AEEI shares as a result of the merger. Specifically, AEEI and its control persons failed to obtain the customary "NOBO" list of CCCX shareholders—a routine part of any due diligence in such a merger. When AEEI was informed of its failure to include Gemrush's CCCX shares in the merger, it attempted to convince Mr. Glassman to execute an unconscionable repurchase agreement, which contained a confidentiality agreement designed to prevent Mr. Glassman from disclosing AEEI's gross negligence. When Mr. Glassman refused to sign this agreement, AEEI and the other defendants transformed their negligence into a fraudulent scheme by colluding to deny Plaintiff of its lawful ownership of AEEI stock owed it as a result of the merger. AEEI thwarted Plaintiff's valid ownership of the shares, and failed to publicly disclose its negligence in an attempt to avoid SEC enforcement action and shareholder suits, as well as attempting to prevent a decline in the price of its shares. Regardless of AEEI's inadequate due diligence in the merger, or its subsequent refusal to acknowledge Plaintiff as a valid shareholder of AEEI, Plaintiff automatically became an AEEI shareholder pursuant to the terms of the plan of merger.

23

24

25

26

27

28

Moreover, while in possession of material, non-public information about the pending merger of AEEI and CCCX, Defendant Brent Brewer, then AEEI CEO and Chairman, privately purchased from AEEI 7,500,000 shares of common stock representing 16% of the outstanding AEEI common stock. Mr. Brewer paid only one-tenth of one cent ($.001) per share-- at a time when AEEI was publicly trading at approximately twenty-six cents ($.26) per share. Defendant Brewer also failed to publicly disclose his

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-2-

1   insider purchase until one (1) year later.

2   Plaintiff Super Pawn Jewelry and Loan, LLC, d/b/a Gemrush ("Gemrush"), by its undersigned

3   attorneys, for their complaint against Defendants American Environmental Energy, Inc. ("AEEI"), John

4   Montague, Brent Brewer, Quicksilver tock Transfer, L.L.C., Weaver & Martin, L.L.C., Christopher

5   Wilson; Wilson, Haglund & Paulsen, P.C., Virginia Cha, Steven Byle, Walter O'Brien, William

6   McManes, Malone Bailey, L.L.P, Randy Drew, Alan Sinderman, TD Ameritrade Inc. (together, the

7   "Defendants") alleges:

8

9                            **<u>NATURE OF THE ACTION</u>**

10

11 1.  This action seeks compensatory and punitive damages due plaintiff arising from, *inter alia*: (a)

12     Defendants' fraudulent and deceptive scheme to deprive plaintiff of its lawful ownership of

13     1,500,000 free-trading common shares of Defendant AEEI (the "Shares"); (b) defendant Brent

14     Brewer's purchase of AEEI shares while in possession of material, non-public information; and (c)

15     Material misstatements and omissions made by Defendant AEEI and others in reports filed with the

16     Securities and Exchange Commission .

17

18 2.  As further detailed herein, in or about August 2007, Plaintiff Gemrush purchased 1,000,000 shares

19     of validly issued, fully paid and non-assessable common stock of The Conscious Company, Inc., a

20     publicly-held Minnesota corporation ("CCCX") (the "Shares). Mr. Glassman received a valid

21     certificate for the Shares. As such, Plaintiff was a "protected purchaser" under Article 8-303 of the

22     Illinois Uniform Commercial Code, and therefore owned the CCCX shares free from any adverse

23     claim. The Shares purchased by Plaintiff were free-trading, and accordingly, the certificate

24     contained no restrictive legend of any kind.

25

26 3.  On or about October 30, 2007, Plaintiff's CCCX certificate was deposited in Plaintiff's brokerage

27     account with Defendant TD Ameritrade.

28

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                       COMPLAINT

4. On or about December 12, 2007, Plaintiff's CCCX Shares were electronically settled and cleared with the Depository Trust & Clearing Corporation ("DTCC"), and Plaintiff's ownership of the Shares were customarily placed in "street name" as an electronic book entry in Plaintiff's TD Ameritrade brokerage account.

5. On or about April 18, 2008, through a series of complex corporate transactions CCCX was merged into AEEI (the "Merger"). The Merger included: (a) CCCX changing its name to AEEI, a Minnesota Corporation ("AEEI-MN"); followed by (b) A Plan of Merger of AEEI-MN (formerly CCCX) into Defendant American Environmental Energy, Inc. a Nevada Corporation ("AEEI" or AEEI-NV") (the Merger Plan").

6. The Merger Plan called for each share of CCCX (now AEEI-MN) to be exchanged with one share of AEEI-NV, the surviving public company (Defendant AEEI herein). Plaintiff was therefore entitled to receive ownership of 1,000,000 shares of Defendant AEEI's common stock as a result of the Merger.

7. Plaintiffs received no notice of the Merger, nor did it ever receive the 1,000,000 AEEI common shares it was entitled to as a result of the Merger.

8. AEEI and certain other defendants failed to perform the modicum of due diligence necessary prior to the Merger to learn that Plaintiff Gemrush was a valid shareholder in CCCX, and therefore entitled to 1,000,000 AEEI shares as a result of the Merger. More specifically, AEEI and its representatives failed to conduct a duly-diligent inquiry into CCCX's shareholder list "NOBO" list, and other related corporate books and records. Had such due diligence been undertaken, AEEI would have known that Plaintiff was a CCCX shareholder entitled to be issued AEEI shares as a result of the Merger.

*Gemrush vs. American Environmental Energy, Inc., et. al.*     COMPLAINT

-4-

9.  Irrespective of AEEI's negligence in failing to account for Plaintiff's shares, Plaintiff automatically became a shareholder of AEEI as a result of the Merger, whether or not AEEI had or should have had knowledge that Plaintiff was a CCCX shareholder.

10. Also on the date of the Merger, Defendant Brewer, about to be appointed AEEI's Chief Executive Officer and Chairman of the Board, purchased from AEEI Seven Million Five Hundred Thousand (7,500,000) shares of its common stock at only one tenth of one cent per share ($.001). Mr. Brewer purchased these shares while in possession of material, non-public information about the impending Merger. Mr. Brewer's insider purchase represented approximately sixteen percent (16%) of AEEI's then issued and outstanding shares. At the time of his insider purchase of these shares at only $.001 per share, AEEI's public price per share was twenty-six cents ($.26).

11. Defendant Brewer failed to disclose that he had purchased these 7,500,000 AEEI shares, until April 16, 2009--one (1) year after his purchase of these shares.

12. Moreover, AEEI failed to disclose the material aspects of the April 18, 2008 Merger with the Commission until October 7, 2008—six (6) months after the Merger. (See Exhibit

13. In or about May, 2008, AEEI effected a 3:2 stock split of its common shares (the "Stock Split"), resulting in Plaintiff's beneficial ownership of AEEI shares being increased from 1,000,000 shares to 1,500,000 shares.

14. In or about January, 2009, Plaintiff informed Defendant AEEI of its failure to include Plaintiff's CCCX shares in the Merger. Defendant Brewer, now AEEI chairman and CEO, along with Defendant Christopher Wilson, acknowledged to Mr. Glassman AEEI's mistake in failing to include Plaintiff's 1,000,000 shares in the Merger and offered Mr. Glassman a confidential "settlement agreement."

*Gemrush vs. American Environmental Energy, Inc., et. al.*     COMPLAINT

-5-

15. This proposed settlement agreement was, inter alia, unconscionable and one-sided, and Mr. Glassman refused to sign it, and demanded he be given his AEEI shares or be recompensed for their fair value.

16. Defendant AEEI subsequently played "hardball" with Mr. Glassman, and fraudulently colluded with other Defendants including Brewer, Wilson and QuickSilver Stock Transfer to deprive Plaintiff of its lawful ownership of AEEI shares due as a result of the Merger and the Stock Split.

17. To date, despite due demand by Plaintiffs, AEEI has failed and refused to deliver Plaintiff its rightful ownership of 1,500,000 shares of AEEI common stock due Plaintiff as a result of the Merger, nor acknowledge and record Gemrush as a valid shareholder of AEEI.

18. Each defendant was instrumental in failing and refusing to acknowledge and record Gemrush as a valid AEEI shareholder entitled to exchange its ownership of CCCX into Shares of AEEI. The refusal and failure on the part of the defendants to acknowledge Gemrush as a rightful owner of the Shares prevents Gemrush the ability to sell or otherwise transfer its Shares. Each defendant either knew, or was reckless in not knowing that Plaintiff Gemrush was lawfully entitled to ownership of 1,500,000 shares of AEEI common stock.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§ 1331, 1337 and 1367, and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

20. The acts, practices and courses of business constituting the violations alleged herein have occurred within the jurisdiction of the United States District Court for the Northern District of Illinois and elsewhere.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-6-

21. The Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein.

22. Venue is proper in this District pursuant to the provisions of 28 U.S.C. § 1391 because, as further detailed herein, a substantial part of the events giving rise to the claims detailed herein occurred in this District.

**PARTIES**

23. Plaintiff Lawrence Glassman is the owner/operator of Plaintiff Super Pawn Jewelry & Loan, L.L.C. d/b/a Gemrush. Mr. Glassman is a resident of Cook County, Illinois, and is a life-long Illinois resident.

24. Plaintiff Super Pawn Jewelry & Loan, L.L.C. d/b/a Gemrush is an Illinois Limited Liability Company, located in Round Beach Lake, Illinois. Gemrush is an Illinois-licensed pawn broker owned and operated by Plaintiff Lawrence Glassman. Gemrush is a small, single store business with three (3) full-time employees.

25. Defendant American Environmental Energy, Inc. ("AEEI") is a Nevada corporation with its principal place of business located in Houston, Texas. AEEI's common stock is registered with the Securities and Exchange Commission (the "Commission") under Section 12(g) of the Securities Exchange Act, as amended (the "Exchange Act"). AEEI's common stock is traded over the counter on the "pink sheets" under the symbol AEEI.pk.. Defendant Brent Brewer, 47, is a resident of California. During the scheme described herein, Brewer was AEEI's Chief Executive Officer and Chairman of the Board. On April 18,2008, Defendant Randy Drew appointed Mr. Brewer as a director of AEEI. On or about April 4, 2011, Mr. Brewer resigned his positions as

President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, Treasurer and Secretary of AEEI, as well as a director. Mr. Brewer is the beneficial owner of 7,500,000 shares of AEEI common stock, representing approximately 16% of all issued and outstanding shares of AEEI common stock.

26. Defendant John Montague is a resident of Houston, Texas. Mr. Montague is currently AEEI's CEO, President, CEO, CFO, Treasurer, Secretary, and a Director.

27. Defendant Steven Byle, is a resident of California, and Chairman of the AEEI board of directors since April 4, 2011. Mr. Byle was appointed a director of AEEI on March 3, 2009. Mr. Byle is the beneficial owner of 1,713,444 common stock shares of AEEI.

28. During the scheme described herein, Defendant Randy Drew was AEEI's President, Principal Executive Officer, Principal Financial Officer, Principal Accounting Officer, Treasurer and Secretary of the Company and a director of AEEI until his resignation on April 18, 2008. Prior to being appointed as an officer and director of AEEI, Mr. Drew was also President of CCCX, as well as CCCX's transfer agent.

29. Defendant Christopher Wilson is a resident of California. Mr. Wilson is a licensed California attorney representing AEEI since in or about 2008. Mr. Wilson is a "control person" of AEEI, as that term is defined in the Exchange Act.

30. Defendant Wilson, Haglund & Paulsen, P.C. ("WH&P") is a law firm located in Irvine, California. Wilson, Haglund & Paulsen is corporate counsel to Defendant AEEI. Defendant Christopher Wilson is a principal in WH&P.

*Gemrush vs. American Environmental Energy, Inc., et. al.*　　　　　　　　COMPLAINT

-8-

31. Defendant Randy Drew is a resident of Marina Del Rey, California. Mr. Drew was the President, CEO and sole board member of AEEI between on or about April 4, 2008 until on or about May 1, 2008. He was also President, CEO, and sole board member of CCCX from in or about 2006 to in or about April, 2008.Mr. Drew was also CCCX's transfer agent during the time he was with CCCX.

32. Defendant Virginia Cha is a resident of Singapore. Ms. Cha was a member of the board of directors of AEEI from on or about October 16, 2008 to on or about April 5, 2010.

33. Defendant Walter O'Brien is a resident of California. Mr. O'Brien was a member of the board of directors of AEEI from on or about April 13, 2009 to on or about Present.

34. Defendant William McManes is a resident of California. Mr. McManes was a member of the board of directors of AEEI from on or about May 14, 2009 to on or about Present.

35. Defendant Alan Sinderman is a resident of Las Vegas, Nevada. He is the owner and principal officer of Defendant Quicksilver Stock Transfer, LLC.

36. Defendant Quicksilver Stock Transfer, LLC has been the stock transfer agent for Defendant AEEI since in or about March 2008. Its main offices are in Las Vegas, Nevada.

37. Defendant Malone Bailey L.L.P. is a certified public accounting firm with main offices in Houston, Texas. Malone Bailey has served as AEEI's auditors from in or about August 2010 to the present.

38. Defendant Weaver & Martin L.L.C. is a certified public accounting firm with main offices in Kansas City, Missouri. Weaver & Martin served as AEEI's auditors from in or about 2007 to on or about August 2010.

39. Defendant TD Ameritrade is a stock brokerage firm with main offices in Omaha, Nebraska. Plaintiff Gemrush had a customer account with TD Ameritrade.

## FACTS

### PLAINTIFF'S PURCHASE OF CCCX STOCK

40. In or about August 2007, Mr. Lawrence Glassman purchased One Million (1,000,000) free-trading common stock shares of The Conscious Company, Inc., ("CCCX"), on behalf of his company, Plaintiff Gemrush. At the time, CCCX was a dormant "shell" company. Mr. Glassman purchased the Shares from Defendant Randy Drew, CCCX's Chief Executive Officer and Chairman of the Board. Plaintiff paid valuable consideration of approximately $500,000.00 for the Shares, and the Shares were issued fully-paid and non-assessable, and not subject to any preemptive rights.

41. On or about October 30, 2007, Plaintiff Glassman received from Defendant Drew a valid CCCX stock certificate for the 1,000,000 shares of free-trading common stock (the " Original Certificate"). The Original Certificate was signed by Defendant Drew in his capacity as CCCX principal officer.

42. The Original Certificate was deposited in Plaintiff's TD Ameritrade securities brokerage account, and customarily placed in book-entry form in "street name." Plaintiff subsequently requested a new certificate which, after TD Ameritrade completed its standard legal review, was delivered to Mr. Glassman on or about April 8, 2008 (the "New Certificate"). A copy of the New Certificate is attached hereto as Exhibit A.

43. Neither the Original nor the New Certificate contained any restrictive legend restricting sale or transfer of the Shares, nor was there any other such contractual restrictions on the Shares.

44. After TD Ameritrade received the Original Certificate from Mr. Glassman, TD Ameritrade's legal department contacted DTC, and conducted its standard legal review of securities which are to be deposited and transferred to book-entry form in street name. Upon its legal department's opinion that the Original Certificate was valid, TD Ameritrade contacted the CCCX transfer agent, who delivered the Certificate to TD Ameritrade. TD Ameritrade deposited the Certificate into Gemrush's account on or about December 12, 2007. A copy of a letter from TD Ameritrade dated July 27, 2011 (the TD Ameritrade Letter"), acknowledges that Plaintiff's CCCX shares are valid, is annexed hereto as Exhibit C.

45. The TD Ameritrade Letter provides, *inter alia*, that "the [CCCX] shares had cleared the legal review of the [CCCX] transfer agent at the point of transfer on December 12, 2007, and were, at that point, free trading shares." (See Exhibit C).

46. Similarly, Plaintiff's valid ownership of the Shares was noted in its monthly account statements from TD Ameritrade, for the period December 2007-April 2008, attached hereto as Exhibit B.

47. Because Gemrush obtained possession of both the Original Certificate and the New Certificate, and had no notice of any adverse claim to the Shares, Gemrush is a "protected purchaser" under Article 8-303 of The Illinois Uniform Commercial Code (the "Code"). As a "protected purchaser" Gemrush is protected against any adverse claim against its shares.

## THE MERGER OF CCCX INTO AEEI

48. On April 18, 2008, through a series of complex corporate transactions, all effected on that day, CCCX was merged into AEEI was effected (the "Merger"). The Merger included: (a) CCCX changing its name to AEEI, a Minnesota Corporation ("AEEI-MN"); followed by (b) A Plan of merger of AEEI-MN (formerly CCCX) into Defendant American Environmental Energy, Inc. a

Nevada Corporation, and the Defendant herein ("AEEI" or AEEI-NV") (the "Merger Plan").   A copy of the certificate of name change from CCCX to AEEI is attached hereto as Exhibit D. A copy of the Merger Plan is annexed hereto as Exhibit E.

49. The Merger called for each share of  CCCX (now AEEI-MN) to be exchanged with one share of AEEI-NV, with AEEI-NV (the Defendant herein) being the surviving public company.

50. The Merger Plan provided, *inter alia,* that each share of AEEI-MN (formerly CCCX),would be exchanged for one share of AEEI-NV (the defendant herein).   Specifically, section 1.02 of the Merger Plan provided, *inter alia,* that the holders of all issued and outstanding shares of stock of AEEI-MN (formerly CCCX) shall automatically become holders of shares of AEEI-NV, whether or not certificates representing those shares are then issued and delivered. [Emphasis supplied.]

51. Section 3.01 of the Merger Plan provided that all of the assets and property of whatever kind and character of AEEI-MN would immediately vest in AEEI-NV, and that AEEI-NV would be liable for all of the liabilities and obligations of the AEEI-MN, and any claim or judgment against AEEI-MN may be enforced against Defendant AEEI-NV (the Defendant AEEI herein).

52. Plaintiff received no notice of the Merger. AEEI failed to publicly disclose the Merger of  CCCX into AEEI until October 7, 2008, six months after the Merger (See Form 8-K dated October 7, 2008, attached hereto as Exhibit E)

53. To date, AEEI has continued to fail and refuse to deliver to Plaintiff the 1,500,000 shares of  AEEI common stock lawfully and rightfully due Plaintiff as a result of the Merger.

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                                    COMPLAINT

54. AEEI has failed to file its periodic reports with the Commission since the first quarter of 2003, including, without limitation, failing to file materially correct reports with the SEC that accurately account for Plaintiff's ownership of its shares.

55. Specifically, AEEI's audited Financial Statements for the year ended December 31, 2008, prepared by defendant Weaver & Martin, contained material misstatements and omissions relating to Plaintiff's ownership of 1,000,000 shares of AEEI common stock it owned as a result of the April, 2008 merger of CCCX into AEEI. Further, these financial statements were not filed with the SEC until on or about July 20, 2010—a full year and a half after they were due. AEEI has to date failed to correct these material misstatements and omissions in its SEC reports with respect to Plaintiff's ownership of its stock.

56. AEEI also has a recent and sordid history of securities fraud relating to the offer and sale of its securities, in which action was taken by both the United States Department of Justice and the Securities and Exchange Commission against certain brokers engaged in the fraudulent sale of $11,000,000 of AEEI securities. Moreover, on November 13, 2008, Pennsylvania Securities Commission halted AEEI's offer and sale of unregistered securities in Pennsylvania, and issued a Summary Order to Cease and Desist against AEEI. In 2011, the Securities and Exchange Commission barred several penny stock brokers associated with AEEI from the securities industry in connection with fraudulent offerings of AEEI securities to unsuspecting investors. In February, 2011, one broker who sold AEEI stock pled guilty to mail fraud, was sentenced to thirty-seven months in prison, and ordered to pay $200,000 in restitution.

**AEEI'S FAILURE TO PERFORM DUE DILIGENCE IN THE CCCX-AEEI MERGER**

**BACKGROUND:**

**"STREET NAME" SHARE OWNERSHIP**

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

57. In the United States, very few publicly traded shares are registered in companies' records in the names of the ultimate beneficial owners. Instead, approximately 70-80% of all public companies' shares are held in nominee form, or "*street name*."

58. Most street name shares are held at The Depository Trust & Clearing Corporation ("DTC"), the only central depository institution in the United States. These street name shares are registered in the name of "Cede & Co.", the nominee name used by DTC. [1]

59. Through a complex chain of *custodial ownership*, DTC holds the street name shares on behalf of its participant brokers or banks. These participant brokers and banks in turn hold the street name shares on behalf of their clients, the ultimate beneficial owners of the shares. Thus, the names of the ultimate beneficial owners of street name shares – i.e., the customers of the brokers and banks who have deposited the shares with DTC – are maintained by the brokers and banks, not by the companies themselves.

60. A schematic chart showing how this system of custodial, "street name" ownership works is attached hereto as Exhibit F. A schematic chart showing how the street name ownership process worked with respect to Plaintiff's ownership of CCCX stock is attached hereto as Exhibit G.

## The "NOBO/OBO" System

61. The ultimate beneficial owners holding shares in street name can choose to be considered as either a "non-objecting beneficial owner ("NOBO") or "objecting beneficial owner" ("OBO"). NOBO shareholders are those beneficial owners who do not object to having their names and addresses

---

[1] The remaining non-street name shares are held by "registered" shareholders, who hold shares directly on the books of the issuer and/or its transfer agent in their actual names, rather than in the nominee name of Cede & Co. at DTC.

*Gemrush vs. American Environmental Energy, Inc., et. al.*     COMPLAINT

-14-

disclosed to the company in which they hold shares. Conversely, OBO shareholders object to the disclosure to an issuer of their names and addresses.

62. Recognizing that the system of custodial ownership left companies without direct contact with a large proportion of their beneficial owners, the Securities and Exchange Commission (the "SEC") adopted rules in 1983 which require brokers and banks to provide companies with lists of NOBO shareholders (a "NOBO List"). Under SEC Rule 14b-1(c), brokers and other record holders of stock in street name must compile a NOBO List at a corporation's request. A company may request a NOBO List from a broker or bank at any time. A schematic chart showing how companies obtain NOBO lists is attached hereto as Exhibit H.

61. In almost all cases, brokers and banks delegate the responsibility to provide issuers with a NOBO List to Broadridge Financial Solutions Inc. ("Broadridge"), the main provider of outsourcing services regarding shareholder communications in the United States. Broadridge provides a single list of all NOBOs to the company in a standardized format, which sets forth the name, address and securities position for each NOBO. Because Broadridge does not disclose the identity of a NOBO's broker or bank intermediary, relying on Broadridge to provide the NOBO list allows brokers and banks to preserve the confidentiality of their customer lists from each other and from the company. Broadridge's standard NOBO request form is attached hereto as Exhibit I.

62. Obtaining a "NOBO" and "OBO" list of shareholders is the standard method used to locate and communicate with the beneficial owners of a company's securities. Obtaining NOBO and OBO lists is the usual and customary standard method which prudent management, and experienced securities attorneys and other securities industry professionals (such accountants, brokers, and transfer agents) utilize when performing due diligence on a company prior to consummating a merger.

*Gemrush vs. American Environmental Energy, Inc., et. al.*     COMPLAINT

-15-

63. Due diligence checklists for mergers, authored by experienced securities attorneys, are attached hereto as Exhibit J, and Exhibit K, respectively. It is clear from these Exhibits that experienced securities practitioners view obtaining and reviewing the NOBO list as a fundamental and customary part of a competent due diligence process in mergers and reverse mergers.

64. It is  therefore vital that an issuer to obtain  a NOBO list prior to a merger, or the issuer (in this case, AEEI) will not have adequate knowledge of, nor able to communicate with the beneficial owners of the merger target's (or its own) shareholders, and thus will have incomplete and inadequate knowledge of the capital structure of the merger target (in this case, CCCX).

65.  AEEI easily could have—but did not--obtain a NOBO list of CCCX shareholders during the due diligence process preceding the Merger with CCCX. A schematic chart showing how Defendant AEEI could have obtained a NOBO list of CCCX shareholders prior to the merger is attached hereto as Exhibit L.

66. In the case of the AEEI/CCCX Merger, neither AEEI's management, nor its counsel, accountants and other representatives undertook the fundamental due diligence procedure of obtaining CCCX's NOBO list prior to consummating the Merger.

67.  As a result of failing to obtain the NOBO list of CCCX shareholders, AEEI failed to discover that Plaintiff was a valid NOBO shareholder of CCCX entitled to receive AEEI shares pursuant to the Merger.

68. Additionally, when  Mr. Glassman  informed  Defendants AEEI, Brewer and Wilson that they had failed to include Plaintiff's CCCX shares in the Merger, AEEI and its representatives  failed again to obtain the CCCX NOBO list which would have confirmed the existence of Plaintiff as a valid CCCX shareholder entitled to AEEI shares a result of the Merger.

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

69. While the NOBO mechanism is complex and can be a trap for the unwary, such complexity does not excuse securities industry professionals from not performing this vital due diligence task. This is especially true for those companies, officers and directors, attorneys, accountants and others who have undertaken to work for publicly-held "pink sheet" companies that face heightened regulatory scrutiny from the SEC and FINRA.

**<u>Transfer Agent Culpability</u>**

70. In his capacity as CCCX's transfer agent, Defendant Drew delivered a due diligence package to Defendant Sinderman, and Quicksilver, AEEI's transfer agent. This due diligence package contained, inter alia, a shareholder list of CCCX shareholders. This CCCX shareholder list included Plaintiff.

71. Upon information and belief, in or about April, 2008, prior to the Merger of AEEI and CCCX, the CCCX shareholder list was delivered by CCCX transfer agent (and CCCX CEO/Chairman) Randy Drew to AEEI and its transfer agent, Defendant Quicksilver.

72. Upon information and belief, Defendant AEEI and Defendant Quicksilver and Sinderman did not adequately review the shareholder list.

73. On or about July 15, 2011, Defendant Sinderman informed Plaintiff, through its securities counsel, that contemporaneously with the Merger, he had received the CCCX shareholder list from CCCX's transfer agent, and would review it and discuss it with Plaintiff's counsel.

74. Defendant Sinderman subsequently told Plaintiff's securities counsel that he had located the file and reviewed it, and that Plaintiff was not listed on the CCCX shareholder list. Defendant

*Gemrush vs. American Environmental Energy, Inc., et. al.*   COMPLAINT

-17-

Sinderman also informed Plaintiff's counsel that he had been placed in a precarious position, since he was AEEI's transfer agent, and that he had discussed counsel's inquiry with AEEI and Defendant Wilson after speaking with Plaintiff's securities counsel.

75. When asked the name of CCCX's transfer agent whom he had dealt with at the time of the Merger, Defendant Sinderman initially--and falsely—stated to Plaintiff's counsel that Olde Monmouth Stock Transfer Co. of Highlands, New Jersey ("Olde Monmouth") was CCCX's transfer agent. When counsel contacted Olde Monmouth, he was informed that Olde Monmouth was never CCCX's transfer agent,  and had never heard of either Defendant Sinderman or Defendant Quicksilver.

76. Upon information and belief, Defendant Sinderman knew at all times relevant thereto that Defendant Drew was CCCX's transfer agent, and that Defendant Sinderman and Quicksilver did not obtain an adequate or correct shareholder list on behalf of its client, AEEI. Defendant Sinderman  thus intentionally misrepresented facts surrounding the CCCX shareholder list and CCCX's transfer agent, intentionally misled Plaintiff's counsel, and intentionally colluded with Defendant AEEI and Defendant Wilson to deprive Plaintiff of its rightful ownership of AEEI shares as a result of the Merger.

77. Upon information and belief, Defendant Sinderman  knew Defendant Drew was CCCX's transfer agent, at all relevant times thereby, but intentionally misled Plaintiff's counsel, since Sinderman knew he had not performed adequate due diligence concerning the location of CCCX shareholders.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-18-

**Defendant Drew's and Brewer's Culpability during the Merger**

78. Prior to, and contemporaneously with the Merger, Defendant Drew had many discussions with, and delivered many "due diligence" documents to, both AEEI and Defendant Brewer.

79. Since the Merger had been planned and discussed among Defendants Drew and Brewer for several weeks prior to the Merger, Brewer knew, or was reckless in not knowing that Plaintiff was a valid CCCX shareholder entitled to AEEI shares as a result of the Merger.

80. At the time of the Merger, Defendant Drew was the President, CEO and sole board member of both AEEI-MN (formerly CCCX) and AEEI-NV (the Defendant AEEI herein), the parties to the Merger.

81. On April 5, 2008, the date the Certificate for Plaintiff's CCCX shares was executed by Defendant Drew in his capacity as CEO of CCCX, Defendant Drew was already engaged in negotiations for the Merger with AEEI and defendant Brewer. Accordingly, Defendant Drew knew that Plaintiff was a valid CCCX shareholder entitled as a result of the Merger to the issuance of 1,000,000 AEEI common shares.

82. On or about April 4, 2008 as a result of the Merger, Defendant Drew became AEEI's CEO and Chairman of the Board, as well as AEEI's transfer agent on April 5, 2008, (the date of the reissuance to Plaintiff of his CCCX certificate).

83. At the time of the Merger, Defendant Drew, because he was AEEI's Chief Executive Officer and Chairman of the Board at the time of the Merger, had actual knowledge that Plaintiff was a valid CCCX shareholder entitled to 1,000,000 shares of AEEI as a result of the Merger. Defendant Drew's recognition of Plaintiff as a valid CCCX shareholder entitled to receive AEEI shares as a

1    result of the Merger is thus imputed to Defendant AEEI and made binding upon it, as a matter of

2    corporate law, agency law, and pursuant to the by-laws of AEEI.

3

4    84. Defendant Drew, in his capacity as CCCX principal officer (and later AEEI principal officer), as

5    well as CCCX transfer agent (and later AEEI transfer agent), had possession, custody and control

6    of both the CCCX and AEEI shareholder lists, and other corporate books and records evidencing

7    Plaintiff's ownership of CCCX shares entitled to be reissued as AEEI shares as a result of the

8    Merger. Such shareholder lists and other books and records are among the usual and customary

9    documents to be reviewed during the due diligence period in a corporate merger.  Accordingly,

10   Defendants AEEI, Brewer,  and Wilson  each knew or were reckless in not knowing, that Plaintiff

11   was a valid CCCX shareholder entitled to AEEI shares as a result of the Merger.

12

13   85.  Defendant Drew remained as AEEI CEO and Chairman of the Board until on or about May 1,

14   2008, when Drew resigned his posts, and Defendant Brewer took over as AEEI CEO and

15   Chairman of the Board, among other positions.  Between the period on or about April 5, 2008

16   (when Drew endorsed the CCCX Certificate to Plaintiff,  to on or about May 1, 2008 (When

17   Drew resigned and Brewer took over), Drew and Brewer consulted frequently about AEEI and its

18   business.

19

20   86. Defendants AEEI and Brewer thus knew, or were reckless in not knowing,  that Plaintiff Gemrush

21   was a valid shareholder of 1,000,000 CCCX free-trading common stock, and therefore entitled to

22   receive   1,000,000 AEEI shares as a result of the Merger. Had such due diligence been

23   undertaken, AEEI would have known that Plaintiff was a valid CCCX shareholder entitled to be

24   issued  1,000,000 AEEI shares as a result of the Merger.

25

26   87. AEEI, Brewer, Wilson and the other AEEI control person defendants also intentionally and/or

27   recklessly failed to include or otherwise account for Gemrush's  Shares in its audited financial

28

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-20-

statements, the books and records of the company, and in Exchange Act reports filed (or necessary to be filed) with the SEC.

**Mr. Glassman learns of the CCCX-AEEI Merger:**

**<u>AEEI attempts to cover-up its mistake</u>**

88. In or about October, 2008, Mr. Glassman went online to obtain information about his CCCX shares. When he did, he discovered that CCCX had been merged into AEEI (the " Merger").

89. Mr. Glassman then contacted AEEI to inquire how he could get his CCCX shares reissued as AEEI shares, as per the Merger, and obtain a new certificate issued by AEEI to replace his CCCX certificate.

90. Defendant Brewer acknowledged and apologized to Mr. Glassman for the oversight in not including Plaintiff's CCCX shares in the Merger, and told Mr. Glassman that AEEI would repurchase the Shares for $75,000.00, and that Defendant Wilson and his firm, Defendant Wilson, Haglund, and Paulsen, AEEI's corporate counsel, would handle the negotiations for the repurchase of the Shares.

91. In or about the period November, 2008-February 2009, Defendants AEEI, Brewer and Wilson attempted to buy Mr. Glassman's silence concerning their recklessness in not knowing Plaintiff was a CCCX shareholder. Accordingly, during that period, these defendants attempted to get Mr. Glassman to execute a settlement and release agreement whereby AEEI promised to pay Mr. Glassman $75,000.00 to retire his shares, and maintain strict confidentiality about AEEI's negligence, so that the AEEI stock price would not plummet, and AEEI and its control persons would not pique the interest or ire of the Securities and Exchange Commission—or its shareholders.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-21-

92. In a series of email correspondences from Defendant Wilson during this period with Mr. Glassman and his attorney at the time, David Rees, Esq., reiterated AEEI's promise to repurchase Plaintiff's shares for $75,000.00. These emails are attached hereto as Exhibit L.

93. On or about January 30, 2009, Mr. Glassman received the draft of a Settlement and Release Agreement (the "Settlement Agreement") from Defendant Wilson. The Settlement Agreement is attached hereto as Exhibit M.

94. Mr. Glassman and his counsel noted that there were many onerous and unconscionable provisions in the Settlement Agreement that neither Brewer nor Wilson ever discussed with them.

95. Among others, Defendant Brewer's promise to repurchase the Shares from Plaintiff for $75,000.00 was no longer an unconditional obligation as agreed upon, but instead was now merely an option at AEEI's sole discretion to repurchase Plaintiff's Shares.

96. The Settlement Agreement also attempted to change the status of Plaintiff's Shares from free-trading and unrestricted Shares to AEEI shares that were not only restricted, but also subject to stringent "lock-up" provisions which significantly limited the ability of Plaintiff to sell the Shares into the marketplace.

97. Further, the Settlement Agreement contained a confidentiality provision designed to prevent Mr. Glassman from disclosing the agreement, and AEEI's negligence regarding their due diligence failure in accounting for Plaintiff's shares in the merger.

*Gemrush vs. American Environmental Energy, Inc., et. al.*     COMPLAINT

-22-

98. Mr. Glassman refused to execute this unconscionable Settlement Agreement. When Mr. Glassman refused to sign this agreement, AEEI, Brewer and Wilson began to collude to deny Plaintiff of its lawful ownership of AEEI stock owed it as a result of the merger. This collusion transformed their mere negligence into a fraudulent scheme against Mr. Glassman.

99. Defendants Brewer and Wilson thus abruptly "pivoted" away from their earlier acknowledgement of Gemrush's valid ownership of the Shares and its promise to repurchase them: Now, in an attempt to cover up their gross negligence, and thwart Mr. Glassman, Defendants Brewer and Wilson began to fraudulently claim that Gemrush was in fact not a valid and lawful owner of the Shares, and that Plaintiff's shares were "counterfeit" shares.

## DEFENDANT BRENT BREWER'S UN-DISCLOSED INSIDER PURCHASE

100. On or about April 16, 2008, while in possession of material, non-public information about the pending merger of AEEI and CCCX, Defendant Brent Brewer, then AEEI CEO and Chairman, privately purchased from AEEI 7,500,000 shares of common stock. Brewer knew about the pending merger since he was an active participant in this transaction.

101. Mr. Brewer's insider purchase of AEEI represented 16% of the then outstanding AEEI common stock. Brewer paid only one-tenth of one cent ($.001) per share-- at a time when AEEI was publicly trading at approximately twenty-six cents ($.26) per share. Further, Defendant Brewer also failed to publicly disclose his insider purchase until one (1) year later, on April 16, 2009, when he filed a Form 3 with the SEC. A copy of this Form 3 is attached hereto as Exhibit N.

*Gemrush vs. American Environmental Energy, Inc., et. al.*

COMPLAINT

-23-

**MR. GLASSMAN DISCOVERS THE FRAUD**

102. July 31, 2011 Mr. Glassman learned from his counsel for the first time, *inter alia*, that Defendant AEEI and the other defendants had perpetrated a fraud against him. Until that time, Plaintiff had no cause to believe a fraud had been perpetrated upon him.

103. On or about July 31, 2011, after Mr. Glassman had retained securities counsel, and counsel completed an investigation into this matter, Mr. Glassman, as a layperson and unsophisticated investor, did not discover, and in the exercise of reasonable due diligence could not have discovered the fraud Defendant AEEI and other defendants had committed against him.

104. Indeed, because of the complicated corporate and securities machinations Defendant engaged in to deprive Plaintiff of its lawful ownership of AEEI shares, no reasonable due diligence by Plaintiff--or any reasonable investor of ordinary intelligence-- could have discovered the fraud until Plaintiff's counsel concluded its investigation on or about July 31, 2011.

105. Moreover, as described herein, Defendant Wilson's actions had the deliberate effect of preventing Mr. Glassman from investigating this matter and discovering the fraud committed against him. As such, Defendant Wilson misled the Plaintiff, and took unfair advantage of him, and intentionally kept Mr. Glassman from investigating—and discovering-the fraud perpetrated upon him.

106. Accordingly, until on or about July 31, 2011, Plaintiff had no evidence of the possibility of fraud, and did not have, and in the exercise of reasonable due diligence could not have had notice of the fraud committed by AEEI against him regarding his securities.

107. Subsequently, throughout the period from in or about February 2009 to the present, Gemrush has continuously requested AEEI and its representatives and agents to permit the transfer of the

Shares into Gemrush's name and/or to pay it damages for AEEI's denial of Gemrush's lawful ownership and right to trade the shares it is entitled.

108. To date, AEEI and its control persons have continued to  fraudulently collude in "stonewalling" Plaintiff and preventing Plaintiff  from obtaining lawful ownership of the Shares.

109. During  the  time  that  AEEI   has  fraudulently   stonewalled  Plaintiff   and  refused  to  deliver Plaintiff its rightful ownership of AEEI  shares so that Plaintiff could sell or otherwise dispose of them,  AEEI  stock  has  precipitously  tumbled  downward.  As  of  December  9,  2011,    AEEI common  stock  trades  on  the  pink  sheets  at  only  $.03  per  share,  and  there  is  virtually  no  active market for the stock.

## COUNT I

### Negligence

**(Defendants AEEI,  Brewer, Wilson, Montague, Byle, Wilson,  Cha, McManes, O'Brien, Haglund & Paulsen, Quicksilver, Sinderman, Weaver & Martin, LLC, Malone Bailey, LLP, and TD Ameritrade)**

110. Plaintiff Gemrush incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 to 109 as though fully set forth herein.

111. Defendants breached their duties to the Plaintiffs and acted negligently in failing to perform the necessary  due  diligence  into  the  capital  structure  of  CCCX  that  is  usual  and  customary  for corporate mergers, such as the Merger of CCCX into AEEI.

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                                        COMPLAINT

-25-

112. Had Defendants performed such usual and customary due diligence, they would have, *inter alia,* obtained and examined the NOBO list of shareholders, and thus would have known, or reasonably should have known, that Plaintiff Gemrush was a lawful and valid CCCX shareholder, and therefore entitled to 1,000,000 AEEI common shares as a result of the Merger.

113. As a direct and proximate result of such negligence, Plaintiffs were damaged in an amount to be proven at trial, but in a sum in excess of $3,000,000.00 (three million dollars), according to proof.

## COUNT II

### VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 [15 U.S.C. 78j(b)] AND RULE 10b-5 [17 C.F.R. 240.10b-5] THEREUNDER

### (Defendants AEEI, Montague, Brewer, Byle, Wilson, and Sinderman)

114. Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 113 as though fully et forth herein.

115. Section 10(b) of the Securities Exchange Act of 1934 provides that "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . (b) To use or employ, in connection with the purchase or sale of any security . . . any manipulative device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

116. Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission under Section 10(b) of the Securities Exchange Act of 1934 provides that "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice

to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

117.  From at least on or about April, 2008 through the present, Defendants AEEI, Montague, Brewer and Wilson, in connection with the purchase and sale of AEEI's securities by Plaintiff Gemrush, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and course of business which operated or would operate as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of such securities.

118.  Defendants knew or were reckless in not knowing of the facts and circumstances described herein.

119.  The knowledge of Brewer, Drew, Montague, Brewer, Byle and Wilson is imputed to AEEI.

120.  By reason of the activities described above, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

121.  As a proximate result of the misrepresentations, omissions, concealments and failures to disclose by these Defendants, Gemrush has been damaged in the amount of approximately $3,000,000.00.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-27-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COUNT III

## VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 [15 U.S.C. 78j(b)] AND RULE 10b-5 [17 C.F.R. 240.10b-5] THEREUNDER

### (Defendant Brewer)

122. Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 121 as though fully set forth herein.

123. Section 10(b) of the Securities Exchange Act of 1934 provides that "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . (b) To use or employ, in connection with the purchase or sale of any security . . . any manipulative device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

124. Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission under Section 10(b) of the Securities Exchange Act of 1934 provides that "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

125. From at least on or about April, 2008 through the present, Defendant Brewer, in connection with his purchase of AEEI's securities while in possession of material non-public information about the Merger, and his failure to timely and adequately disclose such purchase, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and course of business which operated or would operate as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of such securities.

126.  Defendant Brewer knew or was reckless in not knowing of the facts and circumstances described herein.

127.  The knowledge of Brewer is imputed to AEEI.

128.  By reason of the activities described above, Defendant Brewer violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

129.  As a proximate result of the misrepresentations, omissions, concealments and failures to disclose by Defendant Brewer, Plaintiff has been damaged in the amount of approximately $3,000,000.00.

## COUNT IV

### VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT

(Defendants Brewer, Wilson, Drew, Wilson, Haglund & Paulsen, Sinderman, Quicksilver, Malone & Bailey, Byle, Cha, McManes, O'Brien, and Weaver & Martin)

130.  Plaintiffs repeat and reallege paragraphs 1 through 129 as though fully set forth herein. This claim is asserted against the Individual Defendants.

131.  Each of the following defendants acted as a controlling person of Defendant AEEI within the meaning of Section 20(a) of the   Securities Exchange Act as alleged herein: Brent Brewer, Christopher Wilson, John Montague, Steven Byle, Virginia Cha, Walter O'Brien, William McManes, and Randy Drew (collectively, the "Controlling Person Defendants").

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-29-

132. By virtue of their high-level positions with Defendant AEEI, participation in and/or awareness of Defendant AEEI's operations and/or intimate knowledge of Defendant AEEI's fraudulent marketing and promotions and actual performance, each of the Control Person Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Defendant AEEI, including the content and dissemination of the various statements which Plaintiff alleges are false and misleading. Each of the Control Person Defendants was provided with or had unlimited access to copies of Defendant AEEI's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

133. In addition, each of the Control Person Defendants had direct involvement in the day-to- day operations of Defendant AEEI and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.

134. As set forth above, AEEI and the Control Person Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, each of the Control Person Defendants is liable pursuant to Section 20(a) of the Exchange Act.

135. As a direct and proximate result of the Control Person Defendants' wrongful conduct, Plaintiffs suffered damages in connection with the failure and refusal of AEEI to acknowledge Plaintiff's lawful and valid ownership of AEEI securities in an amount of approximately $3,000,000.00.

1

2

**COUNT V**

3

**VIOLATIONS OF SECTION 13(A) OF THE EXCHANGE ACT [15 U.S.C. § 78T(A)] AND
RULES 12B-20, 13A-1, AND 13A-13 [17 C.F.R. §§ 240.12B-20, 240.13A-1, AND 240.13A-13]
THEREUNDER BY MONTAGUE, BREWER, BYLE, AND WILSON
AS CONTROL PERSONS UNDER SECTION 20(A) OF THE EXCHANGE ACT [15 U.S.C. §
20(A)]**

4

5

6

**(Defendants Montague, Brewer, Byle and Wilson.)**

7

8

136. Paragraphs 1 through 135 are re-alleged and incorporated by reference as if set forth in full herein.

9

10

137. From at least on or about April, 2008 through the present, AEEI, under the control of Montague, Brewer, Byle, and Wilson directly and indirectly, failed to file or caused a failure to file with the Commission, in accordance with such rules and regulations that the Commission has prescribed as necessary and appropriate in the public interest and for the protection of investors, AEEI's annual and periodic reports on Forms 10-Q and 10-K and annual proxy statements, and also failed to include in those reports such further material information, as was necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

11

12

13

14

15

16

17

138. By reason of the activities described above, AEEI violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a- 13] promulgated thereunder.

18

19

20

139. By reason of the activities described in paragraphs above, and pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], Montague, Brewer, Byle and Wilson are liable for AEEI's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13] promulgated thereunder.

21

22

23

24

25

140. As a proximate result of the misrepresentations, omissions, concealments and failures to disclose by these Defendants, Gemrush has been damaged in the amount of approximately $3,000,000.00.

26

27

28

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*

COMPLAINT

-31-

**COUNT VI**

**VIOLATIONS OF SECTIONS 13(B)(2)(A) AND 13(B)(2)(B) OF THE EXCHANGE ACT [15 U.S.C. §§78M(B)(2)(A) AND 78M(B)(2)(A)] BY MONTAGUE, BREWER, BYLE AND WILSON AS CONTROL PERSONS UNDER SECTION 20(A) OF THE EXCHANGE ACT [15 U.S.C. § 20(A)]**

**(Defendants Montague, Brewer, Byle, Wilson, and Weaver & Martin, LLC, and Malone Bailey, LLP)**

141.  Paragraphs 1 through 140 are re-alleged and incorporated by reference as if set forth in full herein

142.  Each of the following defendants acted as a controlling person of Defendant AEEI within the meaning of Section 20(a) of the Exchange Act as alleged herein: Brent Brewer, Christopher Wilson, John Montague, Steven Byle, Virginia Cha, Walter O'Brien, William McManes, and Randy Drew (collectively, the "Control Person Defendants").

143.  From at least on or about April, 2008 through the present, AEEI, under the control of Montague, Brewer, Byle, Wilson, Weaver & Martin, LLC and Malone Bailey, LLP directly and indirectly, failed to make and keep books, records, records and accounts, which in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of AEEI.

144.  From at least on or about April, 2008 through the present, AEEI, under the control of Montague, Brewer, Byle, Wilson and Weaver & Martin, LLC and Malone Bailey, LLP, directly and indirectly, failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements.

145.  By reason of the activities described above, AEEI violated Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§78m(b)(2)(A) and 78m(b)(2)(A)] promulgated thereunder.

146.  By reason of the activities described above, and pursuant to Section 20(a) of the Exchange Act, Montague, Brewer, Byle, Wilson, Weaver & Martin, LLC, and Malone Bailey, LLP are liable for

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-32-

AEEI's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

147.  As a proximate result of the misrepresentations, omissions, concealments and failures to disclose by  these Defendants, Gemrush has been damaged in the amount of approximately $3,000,000.00.

## COUNT VII

### VIOLATIONS OF EXCHANGE ACT RULE 13B2-1 [17 C.F.R. § 240.13B2-1]

### (Defendants Montague, Brewer, Byle, Wilson, Weaver & Martin, LLC, and Malone Bailey, LLP)

148.  Paragraphs 1 through 147 are re-alleged and incorporated by reference as if set forth in full herein.

149.  From on or about April, 2008 through on the present, Defendants Montague, Brewer, Byle, Wilson, Wilson Haglund & Paulsen, Weaver & Martin, LLC, and Malone Bailey, LLP directly and indirectly, falsified or caused to be falsified books, records, and accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

150.  By reason of the activities described above, these violated Rule 13b2-1 [17 C.F.R. § 240.13b2-1] promulgated under Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

151.  As a proximate result of the misrepresentations, omissions, concealments and failures to disclose by  these Defendants, Gemrush has been damaged in the amount of approximately $3,000,000.00.

## COUNT VIII

### Violations of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)]

### (Defendants AEEI, Montague, Brewer, Byle, Cha, McManes, and O'Brien)

*Gemrush vs. American Environmental Energy, Inc., et. al.*          COMPLAINT

-33-

152. Paragraphs 1 through 151 are re-alleged and incorporated by reference as if set forth in full herein.

153. From at least on or about April, 2008 through the present, Defendants AEEI, Montague, Brewer, Byle, Cha, McManes, and O'Brien knowingly circumvented or knowingly failed to implement a system of internal accounting controls and knowingly falsified books, records, and accounts described in Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

154. By reason of the activities described above, these defendants, violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

155. As a proximate result of the misrepresentations, omissions, concealments and failures to disclose by these Defendants, Gemrush has been damaged in the amount of approximately $3,000,000.00.

**COUNT IX**

**Common Law Fraud**

**(Defendants AEEI, Brewer, Wilson, Montague, Byle, Sinderman, Quicksilver, Malone and Bailey, Weaver and Martin, Cha, McManes, and O'Brien)**

156. Paragraphs 1 through 155 are re-alleged and incorporated by reference as if set forth in full herein.

157. During the period from in or about February 2009 and continuing through the present, Defendants AEEI, Brewer, Wilson, Montague, Byle, Sinderman, Quicksilver, Malone and Bailey, Weaver and Martin, Cha, McManes, and O'Brien and each of them intentionally engaged in a fraudulent scheme to deny Plaintiff its valid and legal ownership of AEEI common shares it was entitled to receive as a result of the Merger.

158. Plaintiff is informed and believes and thereon alleges that defendants, and each of them, had no intention to acknowledge Plaintiff as a lawful shareowner of AEEI common stock, or permit him

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-34-

to receive possession of his rightful ownership of AEEI shares.

159. Plaintiff is informed and believes and thereon alleges that these defendants, and each of them, failed and refused to deliver Plaintiff AEEI shares for the specific purpose of depriving plaintiff of its lawful and valid ownership of AEEI Shares it was entitled to receive as a result of the Merger, and to otherwise defraud plaintiff, all with malice toward plaintiff. Plaintiff has been injured by the total loss of the value of its CCCX Shares (and thus AEEI shares), and an inability to sell these shares, or otherwise realize their value. Plaintiff seeks compensatory damages in the amount of $3,000,000.00 as a result of the fraudulent acts and omissions of these defendants.

160. These defendants acts and omissions acts were malicious, fraudulent and oppressive, justifying an award of punitive damages of $1,000,000.00 so that defendants and each of them will not engage in such conduct in the future and to make an example of them.

## COUNT X

## Common Law Fraud

## (Defendant Brewer)

161. Paragraphs 1 through 160 are re-alleged and incorporated by reference as if set forth in full herein.

162. On or about April 16, 2008, Defendant Brewer intentionally engaged in a fraudulent scheme by purchasing 7,500,000 shares of common stock of AEEI while in possession of material, non-public information about the Merger. Further, from on or about April 16, 2008 to on or about April 16, 2009, Defendant Brewer intentionally engaged in a fraudulent scheme by failing to disclose his insider purchase until April 16, 2009.

163. Plaintiff is informed and believes and thereon alleges that as a result of Brewer's fraudulent conduct, Plaintiff has been injured and seeks compensatory damages in the amount of $3,000,000.00 as a result of the fraudulent acts of Defendant Brewer.

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

164. Brewer's acts and omissions acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Brewer will not engage in such conduct in the future and to make an example of him.

## COUNT XI

### Conversion

### (Against Defendant AEEI)

165. Plaintiff incorporates, re-alleges and repeats paragraphs 1 through 165 as if set forth fully herein.

166. At all times herein mentioned, and in particular, since in or about August 2007, Plaintiff Gemrush was and still is a valid CCCX shareholder, and entitled to possession or recompense for his Shares.

167. Gemrush purchased the Shares for valuable consideration, had no notice of any adverse claim to the Shares, and took possession and control of the Certificate relating to the Shares.

168. Gemrush is the lawful owner of the Shares as it is a "protected purchaser" under Uniform Commercial Code Article 8-303 codified at 810 ILCS 5/8-303) (the "Code"). As a "protected purchaser" under the Code , Gemrush owns its interest in the Shares free of any adverse claim.

169. In or about April, 2008, Defendant AEEI took the above-mentioned Shares from Plaintiff's possession and converted the same to its own use.

170. From in or about April, 2008 to the present, Plaintiff has demanded the immediate return of the Shares, but Defendant AEEI has to date failed and refused, and continues to fail and refuse to return the Shares to Plaintiff.

171. As a proximate result of Defendant's conversion of the Shares, Plaintiff has been unable to take

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-36-

possession of the Shares and to sell or otherwise dispose of the Shares, and suffered the following damages which are the natural, reasonable, and proximate results of the conversion: $3,000,000.00.

172. The aforementioned acts of Defendant AEEI were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages in the amount of $1,000,000.00.

**COUNT XII**

**Breach of Contract**

**(Defendant AEEI)**

173. Plaintiff incorporates, re-alleges and repeats paragraphs 1 through 173, as though fully set forth herein.

174. The Merger Plan provided, *inter alia*, that Plaintiff, as a CCCX shareholder, was entitled to receive one (1) share of AEEI common stock for every one (1) share of CCCX common stock owned by Plaintiff.

175. Plaintiff has performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the Merger Plan, by being a lawful and valid shareholder of CCCX.

176. Defendant AEEI breached its agreement with Plaintiff by failing and refusing to perform its obligation to convert Plaintiff's CCCX Shares to AEEI Shares, as required in the Merger Plan.

177. As a result of the breach by AEEI in its obligation to Plaintiff pursuant to the Merger to convert Plaintiff's CCCX Shares to AEEI shares, the sum of $3,000,000.00 is now due, owing, and unpaid to Plaintiff. Demand has been made on Defendant AEEI, for repayment but AEEI has failed and refused and continues to fail and refuse, to repay Plaintiff's damages from AEEI's failure to convert Plaintiff's CCCX Shares to AEEI Shares.

*Gemrush vs. American Environmental Energy, Inc., et. al.*　　　　　COMPLAINT

-37-

178. Defendant AEEI has therefore breached its agreement with Plaintiff, who has been damaged thereby in the sum of $3,000,000.00 plus interest at the legal rate according to proof.

## COUNT XIII

### Conspiracy

**(Defendants AEEI, Brewer, Montague, Byle, Wilson, Quicksilver, Sinderman, Cha, McManes, O'Brien, Wilson, Haglund & Paulsen, Weaver & Martin, and Malone & Bailey)**

179. Plaintiff hereby incorporates, repeats and realleges paragraphs 1 through 179, as if fully set forth herein.

180. Defendants American Environmental Energy, Inc. ("AEEI"), John Montague, Brent Brewer, Quicksilver Sock Transfer, L.L.C., Weaver & Martin, L.L.C., Christopher Wilson; Wilson, Haglund & Paulsen, P.C., Virginia Cha, Steven Byle, Walter O'Brien, William McManes, Malone Bailey, L.L.P, Alan Sinderman, TD Ameritrade Inc. (together, the "Defendants") had an implicit, covert agreement to defraud Plaintiff, and to misappropriate Plaintiff's Shares and engaged in planning to effect this wrongful misappropriation of the Shares, and to otherwise deny and prevent Plaintiff's lawful ownership and possession of AEEI Shares it was entitled to receive as a result of the Merger.

181. The Defendants and each of them agreed with each other to defraud Plaintiff, and misappropriate the Shares intended for this misappropriation to occur, each Defendant played a substantial role in defrauding of Plaintiff and the wrongful misappropriation of Plaintiff's Shares and each Defendant intended that the fraud and the wrongful misappropriation of the Shares be committed.

182. As result of this unlawful conspiracy, Plaintiff is entitled to punitive damages in the sum of $1,000,000.

## COUNT XIV

*Gemrush vs. American Environmental Energy, Inc., et. al.*

COMPLAINT

-38-

**Breach of Fiduciary Duty**

**(Against Defendants AEEI, Wilson, Brewer, and AEEI Directors Montague, Brewer, Byle, O'Brien, Cha, McManes,)**

183. Plaintiff hereby incorporates, repeats, and realleges paragraphs 1 through 183, as if fully set forth herein.

184. Defendants AEEI, Wilson, Brewer, and AEEI Directors Montague, Brewer, Byle, O'Brien, Cha, McManes, and each of them, were, at all times relevant to this action, were fiduciaries to Plaintiff.

185. These Defendants, and each of them, breached their fiduciary duty to Plaintiff by not returning the Shares to Plaintiff, as well as fraudulently and/or negligently misrepresenting material facts about AEEI and the legal status of Plaintiff's Shares.

186. These Defendants, and each of them also breached their fiduciary duty to Plaintiff by failing to exercise reasonable due diligence in investigating Plaintiff Gemrush's ownership of the Shares prior to and subsequent to the Merger, and by engaging in a fraudulent scheme to deprive Plaintiff of his ownership of AEEI shares.

187. As result of their breaches of fiduciary duty to Plaintiff, these Defendants generated profit for AEEI at Plaintiff' expense in an amount to be shown according to the proof at the time of trial, but at least $3,000,000.00.

**COUNT XV**

**Breach of Fiduciary Duty**

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-39-

**(Defendant Brewer)**

188. Plaintiff hereby incorporates, repeats, and realleges paragraphs 1 through 188, as if fully set forth herein.

189. Defendant Brewer was, at all times relevant to this action, a fiduciary to Plaintiff.

190. Defendant Brewer breached his fiduciary duty to Plaintiff by purchasing shares of AEEI at a unconscionably low inside price while in possession of material non-public information about the Merger, and failing to disclose such insider purchase until one (1) year subsequent.

191. As result of his breach of fiduciary duty to Plaintiff, Defendant Brewer generated profit for himself at Plaintiff's and AEEI's expense in an amount to be shown according to the proof at the time of trial, but at least $3,000,000.00.

**COUNT XVI**

**Promissory Estoppel**

**(Defendant AEEI)**

192. Plaintiff Gemrush incorporates by reference and re-allege each and every allegation contained in paragraphs 1 to 192, as though fully set forth herein.

193. As detailed herein, Defendant AEEI through Defendant Wilson made clear and unambiguous written and verbal promises and representations to Mr. Glassman that Gemrush was a valid shareholder, and that AEEI would repurchase the Shares from Gemrush.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                                        COMPLAINT

-40-

194.   Defendant AEEI's unambiguously and intentionally promised to acknowledge Gemrush as an AEEI shareholder, as clearly evidenced by the Plan of Merger, the Settlement Agreement, and the January 30, 2009 email from Defendant Wilson.

195.   Those promises and representations were critical to Gemrush making its decision to hold and not trade its Shares, or to proceed with legal remedies against AEEI and other Defendants regarding the Shares.

196.   Plaintiff reasonably and foreseeably relied on those promises and representations of Defendant AEEI and Defendant Wilson as to its entitlement to the Shares.

197.   Gemrush suffered financial injury as a result of its reliance on those promises and representations by Defendants AEEI and Wilson in that they have not yet received either compensation for their Shares, or the Shares themselves.

198.   Wherefore, Plaintiff Gemrush demands judgment against Defendants in the amount of $3,000,000.00.

**COUNT XVII**

**Breach of Duty of Good Faith and Fair Dealing**

**(Defendants AEEI, Wilson, Brewer, Byle, Cha, McManes, O'Brien, Malone & Bailey, Weaver & Martin, Sinderman, and Quicksilver)**

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-41-

199.    Plaintiff hereby reincorporates, realleges and repeats paragraphs 1 through 199 as if fully set forth herein.

200.    As a result of Gemrush being a valid AEEI shareholder pursuant to the Merger, these Defendants were charged with a duty to deal with Plaintiff in good faith and refrain from any act which knowingly or willfully might negatively impact Plaintiff, including, but not limited to, preventing Plaintiff's CCCX shares from being lawfully converted to AEEI shares, and making adequate disclosure about the Merger and related transactions in Exchange Act reports filed with the Commission.

201.    By virtue of the trust and confidence placed in them, and the transactions thereto, such Defendants owed the duty of the utmost good faith, trust and loyalty to the Plaintiff and were duty bound not to misuse, deceive or otherwise engage in inappropriate acts or omissions.

202.    By engaging in such self dealing and dishonesty, all such Defendants breached the duty of good faith and fair dealing with the Plaintiff to advance their own improper business objectives.

203.    As a direct and proximate result of the conduct described herein, all such Defendants breached their duties to the Plaintiff, and in so doing so generated profit for themselves at Plaintiff' expense in an amount to be shown according to the proof at the time of trial, but at least $3,000,000.00.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                                     COMPLAINT

-42-

## COUNT XVIII

### Breach of Duty of Good Faith and Fair Dealing

### (Defendant Brewer)

204. Plaintiff hereby reincorporates, realleges and repeats paragraphs 1 through 204, as if fully set forth herein.

205. As a result of Defendant Brewer being a fiduciary to Plaintiff and the CEO and Chairman of AEEI, he was charged with a duty to deal with Plaintiff in good faith and refrain from any act which knowingly or willfully might negatively impact Plaintiff, including, but not limited to purchasing AEEI shares while in possession of material non-public information about the Merger at an unconscionably low price, and failing to make timely or adequate disclosure about his insider purchase of AEEI stock in Exchange Act reports filed with the SEC.

206. By virtue of the trust and confidence placed in him, and the transactions thereto, Defendant Brewer owed the duty of the utmost good faith, trust and loyalty to the Plaintiff and was duty bound not to misuse, deceive or otherwise engage in inappropriate acts or omissions.

207. By engaging in such self dealing and dishonesty, Defendants breached the duty of good faith and fair dealing with the Plaintiff to advance his own improper business objectives.

208. As a direct and proximate result of the conduct described herein, Defendant Brewer breached his duties to the Plaintiff, and in so doing so generated profit for himself at Plaintiff' expense in an amount to be shown according to the proof at the time of trial, but at least $3,000,000.00.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

-43-

# COUNT XIX

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *ET SEQ.*

**(Defendants AEEI, Montague, Brewer, Byle, Wilson, Cha, McManes, O'Brien, Quicksilver, Sinderman, Malone & Bailey, Weaver & Martin)**

209. Plaintiff incorporates, repeats and realleges paragraphs 1 through 209 as if set forth fully herein.

210. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, prohibits fraudulent and deceptive business acts or practices.

211. Plaintiff Gemrush is informed and believes and thereon alleges that these Defendants engaged in dishonest and deceptive actions during the course of their dealings with Plaintiff.

212. The conduct of these Defendants, as alleged above, constitutes an unfair business practice as that term is defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, in that Defendants' business practices offend established public policy and were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff.

213. These Defendants' acts and practices as described above also deceived, and had a tendency to deceive Plaintiff and constitute a fraudulent business act or practice.

214. Plaintiff are entitled to the relief available under 815 ILCS 505/1, *et seq.*

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*

COMPLAINT

215. As a direct and proximate result of these Defendants' unlawful unfair, and fraudulent conduct, as herein above alleged, Defendants obtained an improper benefit in the form of profits gained from their above-described fraudulent scheme.

216. Pursuant to the Business and Professions Code, the Court has the power to order restitution and/or disgorgement of all sums paid by Plaintiff.

## COUNT XX

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *ET SEQ.*

### (Defendant Brewer)

217. Plaintiff incorporates, repeats and realleges paragraphs 1 through 217, as if set forth fully herein.

218. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, prohibits fraudulent and deceptive business acts or practices.

219. Plaintiff Gemrush is informed and believes and thereon alleges Defendant Brewer engaged in dishonest and deceptive actions during the course of their dealings with Plaintiff.

220. The conduct of these Defendants, as set forth above, constitute an unfair business practice as that term is defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, in that

*Gemrush vs. American Environmental Energy, Inc., et. al.*    COMPLAINT

-45-

Defendant Brewer's business practices offend established public policy and were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff.

221.   Defendant Brewer's acts and practices as described above also deceived, and had a tendency to deceive Plaintiff and constitute a fraudulent business act or practice.

222.   Plaintiff is entitled to the relief available under 815 ILCS 505/1, *et seq.*

223.   As a direct and proximate result of  these Defendant Brewer's unlawful unfair, and fraudulent conduct, as herein above alleged, Defendants obtained an improper benefit in the form of profits gained from their above-described fraudulent scheme.

224.   Pursuant to the Illinois Business and Professions Code, the Court has the power to order restitution and/or disgorgement of all sums paid by Plaintiff.

**COUNT XXI**

**Constructive Trust**

**(Defendant AEEI)**

225.   Plaintiff hereby incorporates, repeats, and realleges paragraphs 1 through 225, as if fully set forth herein.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                              COMPLAINT

-46-

226. As a proximate result of the Defendant AEEI's fraudulent misrepresentations, fraudulent schemes, and otherwise wrongful conduct as alleged herein, Plaintiff has been damaged in the amount to be shown according to the proof at the time of trial, but at least $3,000,000.00.

227. By reason of the fraudulent and otherwise wrongful manner in which the Defendant AEEI has obtained any alleged right, claim or interest in and to Plaintiff's Shares, Defendant AEEI has and had no legal or equitable right, claim or interest therein, but, instead, Defendant AEEI is an involuntary trustee holding said property and profits thereby in constructive trust for Plaintiff, with the duty to convey the same to Plaintiff forthwith.

## COUNT XXII

### Specific Performance

### (Defendant AEEI)

228. Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 to 228 as though fully set forth herein.

229. The consideration Plaintiff paid for the CCCX Shares was fairly bargained for and paid, and Plaintiff's CCCX Shares were validly issued, fully paid and non-assessable.

230. Plaintiff was lawfully entitled to own and receive 1,000,000 shares of AEEI free trading common stock as a result of the Merger. Plaintiff is now lawfully entitled to own and receive 1,500,000 AEEI free trading shares as a result of the Stock Split.

*Gemrush vs. American Environmental Energy, Inc., et. al.*

COMPLAINT

231. Plaintiff has not received, and Defendant AEEI has breached its obligation and refused to deliver, Plaintiff's 1,500,000 free trading shares of AEEI common stock.

232. Plaintiff has fully performed all conditions, covenants, and promises to be performed on the part of Plaintiff to lawfully own and receive the 1,500,000 AEEI free trading shares of common stock.

233. The act of transferring to Plaintiff its 1,500,000 shares of free trading common stock on the part of Defendant AEEI is unique and, therefore, Plaintiff may have no other adequate remedy at law.

234. Accordingly, Plaintiff is entitled to specific performance of its lawful ownership of 1,500,000 free trading shares of AEEI common stock, and a stock certificate representing its ownership thereof.

### COUNT XXIII
### Declaratory Judgment
### (Defendant AEEI)

235. Plaintiff Gemrush repeats and re-alleges paragraphs 1 through 235, as if fully set forth herein.

236. Defendant AEEI has claimed that Plaintiff is not a valid AEEI shareholder entitled to ownership of 1,5000,000 shares of free-trading AEEI common stock, nor possession of a valid Certificate thereof, and that Plaintiff's CCCX certificate (attached hereto as Exhibit A) is counterfeit.

*Gemrush vs. American Environmental Energy, Inc., et. al.*                    COMPLAINT

237. An actual, present and justifiable controversy has arisen between Plaintiff Gemrush and Defendant AEEI concerning Gemrush's lawful right to ownership and possession of the Shares and a valid AEEI Certificate.

238. Gemrush seeks declaratory judgment from this Court that it is the lawful owner of 1,500,000 shares of free-trading, unrestricted common stock of AEEI, and is entitled to receive a physical certificate for these Shares.

239. Gemrush respectfully requests that the Court enter judgment according to the declaratory relief sought herein and award Gemrush its costs in this action.

240. **WHEREFORE, Plaintiff Gemrush prays for:**

    A.    On Counts I-XII, and XIV-XXI, an award of compensatory damages in the amount of $3,000,000.00;

    B.    On Counts IX, XI, and XIII, an award of punitive and exemplary damages in the amount of $1,000,000.00;

    C.    As to Count XVIII, the imposition of a constructive trust against Defendant AEEI;

    D.    Declaratory judgment from this Court that Gemrush is the lawful owner of 1,500,000 shares of free-trading, unrestricted common stock of AEEI, and is entitled to receive a physical certificate for these Shares.

    E.    Specific performance of the issuance by AEEI to Gemrush of a valid certificate representing 1,500,000 free trading unrestricted common stock of AEEI;

    F.    An award of the costs (including reasonable attorney's fees) and disbursements associated with the bringing of this action; and

*Gemrush vs. American Environmental Energy, Inc., et. al.*    COMPLAINT

-49-

1   G.   An award of such other and further relief as this Court deems just and

2   appropriate.

3

4

5                                          Respectfully submitted,

6                                          _____/s/ J. Kevin Benjamin_____

    December 14, 2011                      J. Kevin Benjamin, Esq.

7                                          Counsel to Plaintiff Gemrush

8                                          J. Kevin Benjamin, Esq.

9                                          ARDC #6202321
                                           Theresa Unkrur, Esq.

10                                         ARDC # 6230425
                                           BENJAMIN LEGAL SERVICES

11                                         1016 W. Jackson Boulevard

12                                         Chicago, IL 60607 -2914
                                           T. 312-853-3100

13                                         F. 312-577-1707

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*          COMPLAINT

# INDEX TO EXHIBITS

**EXHIBIT A**
The Conscious Company Common Stock Certificate
Owned by Plaintiff Gemrush

**EXHIBIT B**
Plaintiff Gemrush's TD Ameritrade Account Statements evidencing beneficial ownership of 1,000,000 shares of CCCX common stock. (December 2007, January 2007, March 2008, April 2008)

**EXHIBIT C**
Letter from Defendant TD Ameritrade to Plaintiff dated July 27, 2011

**EXHIBIT D**
The Conscious Company: Name Change to AEEI

**EXHIBIT E**
AEEI Articles of Merger & Plan of Merger; and AEEI Form 8-K dated October 6, 2008.

**EXHIBIT F**
Chart: From Issuer to Investor: The Path of Securities held in "Street Name**"**

**EXHIBIT**                                                                              **G**
 Chart: From Issuer to Investor:The Path of CCCX Securities held by Plaintiff Gemrush in "Street Name": AEEI's Due Diligence Failure

**EXHIBIT H**
Chart: How Companies Obtain NOBO Lists

**EXHIBIT I**
Standard NOBO Request Form, Broadridge

**EXHIBIT J**
Standard Due Diligence Checklist for Mergers: Capital Stock.
*(Source: "Best Practices Memorandum", Ellenoff, Grossman & Schole, LLP, New York, N.Y.  (Dec. 2006)*

**EXHIBIT K**
Due Diligence Process For Reverse Mergers. (*Source: L. Anthony, Esq., Legal & Compliance,  LLC.)*

**EXHIBIT L-A**
Chart:  How Defendant AEEI Could Have Obtained CCCX NOBO List

**EXHIBIT  L-B**
Emails from Defendant Christopher Wilson to Plaintiff

---

*Gemrush vs. American Environmental Energy, Inc., et. al.*                                    COMPLAINT

**EXHIBIT M**
Draft Settlement & Release Agreement

**EXHIBIT N**
Defendant Brewer's April 16, 2009 Form 3 filed with the Securities and Exchange Commission

*Gemrush vs. American Environmental Energy, Inc., et. al.*

-52-

COMPLAINT