**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUPER PAWN JEWLERY & LOAN, LLC d/b/a GEMRUSH, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-cv-8894 |
| AMERICAN ENVIRONMENTAL ENERGY, INC., et al., | ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are motions to dismiss by Defendants American Environmental Energy, Inc. [57]; Christopher Wilson and Wilson Haglund & Paulsen, P.C. [58]; Brent Brewer, John Montague, and Steven Byle [59]; and Weaver & Martin, LLC [51]. For the reasons stated below, those motions are granted. Also before the Court is Defendant TD Ameritrade's Motion to compel arbitration [117] and to dismiss [120]. For the reasons stated below, Defendant TD Ameritrade's motion to compel arbitration is granted and its motion to dismiss is stricken as moot. Also pending in this case is Plaintiff's motion for default [127] against Alan Sinderman and Quicksilver Stock Transfer, LLC. That motion is not discussed in this opinion and will be decided in a separate order.

## I.     Background

The factual background is drawn from Plaintiff's complaint. At this stage in the proceedings, the Court assumes all well-pled allegations to be true and draws all reasonable

inferences in Plaintiff's favor. See *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Plaintiff purchased one million shares of stock in The Conscious Company (CCCX) in August 2007. Compl. ¶ 2. Plaintiff's CCCX certificate was deposited in Plaintiff's brokerage account with Defendant TD Ameritrade. Compl. ¶ 3. On April 18, 2008, CCCX merged with Defendant American Environmental Energy, Inc. (AEEI). Compl. ¶ 5. According to the merger plan, each share of CCCX was to be exchanged with a share of AEEI, the surviving public company. Compl. ¶ 6. Thus, without any further action, Plaintiff became (or should have become) an AEEI shareholder. See, *e.g.*, compl. ¶¶ 6, 9.

In October 2008, Lawrence Glassman, owner and operator of Plaintiff Gemrush, discovered that CCCX had been merged into AEEI. Compl. ¶ 92. Glassman contacted Defendant AEEI to inquire about how to have his CCCX shares reissued as shares of AEEI. Compl. ¶ 93. Defendant Brewer, AEEI's chairman and CEO, "acknowledged and apologized to Mr. Glassman for the oversight in not including Plaintiff's CCCX shares in the Merger, and told Mr. Glassman that AEEI would repurchase the shares for $75,000, and that Defendant Wilson and his firm, Defendant Wilson, Haglund, and Paulson, AEEI's corporate counsel, would handle the negotiations for the repurchase of the shares." Compl. ¶ 94.

From approximately November 2008 to February 2009, Plaintiff and Defendant AEEI, through its lawyers, engaged in settlement negotiations. Compl. ¶ 95 and exhibits N & O. In January 2009, Glassman received a draft settlement agreement. Compl. ¶ 97. He did not like the terms of the settlement offer: AEEI's repurchase of the shares for $75,000 was no longer presented as an unconditional obligation, but instead as an option that AEEI could exercise at its discretion. Compl. ¶ 99. The settlement also proposed to change the status of Plaintiff's shares

from "free-trading and unrestricted" to restricted, making them subject to what Plaintiff describes as "stringent" lock-up provisions. Compl. ¶ 100. Glassman refused to execute the proposed settlement agreement. Compl. ¶ 102. "When Mr. Glassman refused to sign this agreement, AEEI, Brewer, and Wilson began to collude to deny Plaintiff of its lawful ownership of AEEI stock owed it as a result of the merger. This collusion transformed their mere negligence [for failing to include Plaintiff's shares in the merger] to into a fraudulent scheme against Mr. Glassman." Compl. ¶ 102. Following the failed settlement negotiations, Defendants Brewer and Wilson claimed that "Gemrush was in fact not a valid and lawful owner of the Shares, and that Plaintiff's shares were 'counterfeit' shares." Compl. ¶ 103. The parties have continued to dispute ownership of the shares. On December 15, 2011, that dispute spawned this lawsuit.

Plaintiff describes this as "a very straightforward case" that "simply asks [whether] plaintiff [is] a valid owner of AEEI common stock" or whether through negligence or fraud Plaintiff was deprived of its ownership, see [104-1 at 1], but Plaintiff's 53-page, 240-paragraph complaint alleging twenty counts against fourteen Defendants belies that description. Or, more likely, the case is actually "very straightforward" but cannot be straightforwardly resolved because of Plaintiff's scattershot approach. Plaintiff has sued AEEI, its chairman and CEO following the merger (Brent Brewer), several members of AEEI's board (including Steven Byle and John Montague), AEEI's corporate counsel (Christopher Wilson and Wilson Haglund & Paulsen), AEEI's auditors (Weaver & Martin, LLC), and the stock brokerage where Plaintiff had a customer account (TD Ameritrade), and several others who do not have motions currently before the Court. Defendant TD Ameritrade has moved to compel arbitration. The other Defendants named in this paragraph have moved to dismiss.

AEEI has not moved to dismiss all of Plaintiff's claims against it, so this case is set to continue as to (at least) a dispute about (1) whether AEEI negligently failed to include Plaintiff's shares in the merger (Count I, negligence); (2) whether AEEI converted Plaintiff's shares to its own use (Count VIII, conversion); (3) whether AEEI breached a contract with Plaintiff and violated its duty of good faith and fair dealing by failing to include Plaintiff's shares in the merger (Count IX, breach of contract; XIV, duty of good faith and fair dealing); and (4) whether promissory estoppel prevents AEEI from denying Plaintiff's ownership of its shares (Count XIII, promissory estoppel).

## II.      Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang,* 355 F.3d 164, 170–71 (2d Cir. 2004)). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that the plaintiff plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor,* 814 F.Supp. 720 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the plaintiff to do more than the usual investigation before filing his complaint.'" *Amakua Dev. LLC v. H. Ty Warner,* 411 F. Supp. 2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

Defendants argue that many of Plaintiff's claims are time-barred. The period of limitations is an affirmative defense and "[c]omplaints need not anticipate defenses and attempt to defeat them." *Richards v. Mitcheff,* 969 F.3d 635, 637 (7th Cir. 2012). That said, "[a]

plaintiff whose allegations show that there is an airtight defense has pleaded himself out of court." *Id.* In such instances, and on a proper motion — whether the motion to dismiss based on the statute of limitations is correctly described as falling under Rule 12(c) or harmlessly included in a broader Rule 12(b)(6) motion — the Court will dismiss time-barred claims based on the pleadings. See *Id.*

## III. Analysis

### A. Securities Fraud (Counts III, IV, and V)

Plaintiff alleges several claims under Section 10(b) of the Security and Exchange Act of 1934 and SEC Rule 10b-5. Section 10(b) makes it "unlawful for any person * * * [t]o use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe * * * ." 15 U.S.C. § 78j(b). As promulgated by the SEC, Rule 10b–5 makes it unlawful for any person:

a) To employ any device, scheme or artifice to defraud,

b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or

c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. In addition, Plaintiff alleges that several Defendants perpetuated securities fraud as "control persons" in violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a). Plaintiff's Section 20(a) claims depend on an actionable primary securities

law violation. See *Boca Raton Firefighters' and Police Pension Fund v. Devry, Inc.*, 2012 WL
1030474, at \*19 (N.D. Ill. March 27, 2012); *In re Allscripts, Inc. Securities Litigation*, 2001 WL
743411, at \*12 (N.D. Ill. June 29, 2001) ("If a Complaint does not adequately allege an
underlying violation of the securities laws, however, the district court must dismiss the section
20(a) claim.").

Defendants argue that Plaintiff has failed to state claim under Rule 10b-5 for a number of
reasons. Most fundamentally, Plaintiff has not alleged violations "in connection with a purchase
or sale of any security." In response, Plaintiff states:

> [P]laintiff was indeed a purchaser — he "bought" his AEEI stock on April 16, the
> date the date of the Merger — his consideration was the exchange of his CCCX
> stock.

Pl's Resp. [102-1 at 7]. That odd use of scare quotes together with the failure to cite *any*
authority for the proposition that a shareholder purchases shares through a merger confirms
Defendants' point. Regardless, Plaintiff's complaint undermines the idea advanced in his
response briefs that he purchased shares in the merger. One of the complaint's unifying themes
is that

> Irrespective of AEEI's negligence in failing to account for Plaintiff's shares,
> Plaintiff automatically became a shareholder of AEEI as a result of the Merger,
> whether or not AEEI had or should have had knowledge that Plaintiff was a
> CCCX shareholder.

Compl. ¶ 9; Compl. ¶ 73 ("Irrespective of AEEI's due diligence failure, Plaintiff *automatically*
became the legal and valid owner of 1,000,000 shares of AEEI common stock simply by virtue
of the execution of the Plan of Merger, without any additional action necessary on its part.")
(emphasis in original). Plaintiff does not allege a purchase or sale of shares; he claims that he
automatically retained his shares. And losses from retention, if that is his theory, are not
actionable under Rule 10b-5. See *Gandhi v. Sitara Capital Mgmt., LLC*, 689 F. Supp. 2d 1004,

7

1010-11 (N.D. Ill. 2010) ("it is well-established that retention of a security — that is, the decision not to sell a security — is not actionable under Rule 10b-5.") (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754-55 (1975); *O'Brien v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 593 F.2d 54, 58-59 (7th Cir. 1979)).

Moreover, the allegations in Plaintiff's complaint and its responses to Defendants' motions to dismiss make it plain that any Rule 10-b5 claims are time-barred. The two-year statute of limitations for such claims "begins to run once the plaintiff did discover or a reasonably diligent plaintiff 'would have discover[ed] the facts constituting the violation' — whichever comes first." *Merck & Co., Inc. v. Reynolds*, 130 S.Ct 1784, 1789 (2010) (quoting 28. U.S.C. § 1658(b)(1)); see also *McCann v. Hy-Vee, Inc.*, 633 F.3d 926, 929-30 (7th Cir. 2011).

According to Plaintiff's complaint, Plaintiff was wrongfully deprived of AEEI shares on April 18, 2008, when CCCX merged into AEEI. Compl. ¶ 5. Glassman learned that Plaintiff was not given those shares in October 2008, when he "went online to obtain information about his CCCX shares." Compl. ¶ 92. Glassman "then contacted AEEI to inquire how he could get his CCCX shares reissued as AEEI shares, as per the merger, and obtain a new certificate issued by AEEI to replace his CCCX certificate." Compl. ¶ 93. "Defendant Brewer acknowledged and apologized to Glassman for the oversight in not including Plaintiff's CCCX shares in the Merger, and told Glassman that AEEI would repurchase the shares for $75,000 and that Defendant Wilson and his firm, Defendant Wilson, Haglund, and Paulsen, AEEI's corporate counsel, would handle the negotiations for the repurchase of the shares." Compl. ¶ 94. Negotiations began in November 2008. Compl. ¶ 95.

In other words, the merger occurred in April 2008 and Plaintiff learned of the problem with its shares in October 2008. By November 2008, the parties were negotiating a settlement.

Therefore, at the latest, Plaintiff's claim (if any) accrued in November 2008. By then, Plaintiff knew enough to seek a settlement. If his actual diligence led him to seek a settlement in November 2008, his reasonable diligence could have led him to discover the facts that he now alleges as securities violations. But Plaintiff did not sue before or even soon after the settlement negotiations with AEEI; Plaintiff waited to sue until December 15, 2011. Therefore, based on his own allegations, it is evident that Plaintiff's Securities Act claims are time-barred.[1]

## B.     Illinois Consumer Fraud Act (Counts XVI and XVII)

By depriving Plaintiff of AEEI shares, Plaintiff believes that various Defendants engaged in "unfair business practices" in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). ICFA is "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "[A] plaintiff may pursue a private cause of action under [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto Ins.*, 835 N.E.2d 801, 853-54 (Ill. 2005).

---

[1] Plaintiff's complaint asserts that the Court has subject matter jurisdiction based its federal securities claims. See 28 U.S.C. § 1331. Once all federal claims are dismissed at an early stage of the case, as here, the Court typically dismisses remaining state-law claims without prejudice, allowing the Plaintiff to pursue those claims in federal court. See *Groce v. Eli Lilly,* 193 F.3d 496, 501 (7th Cir. 1999) ("it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). In this case, however, Plaintiff carefully noted the complete diversity of the parties and that the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332. Because it is plain that Plaintiff could amend his jurisdictional statement successfully to reassert subject matter jurisdiction under 28 U.S.C. § 1332, dismissal for lack of subject matter jurisdiction would be inappropriate. *Muscarello v. Ogle County Bd. of Com'rs*, 610 F.3d 416, 425 (7th Cir. 2010) ("[T]he rule in this circuit has been that the 'court's discretion to dismiss for lack of subject matter jurisdiction when the plaintiff could have pleaded the existence of jurisdiction and when in fact such jurisdiction exists, should be exercised sparingly.'") (quoting *Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*, 523 F.2d 543, 549 (7th Cir. 1975)); see also 28 U.S.C. § 1653.

The elements of a claim under ICFA are: (1) a deceptive act or unfair practice by the defendant, (2) the defendant's intent that the plaintiff rely on that act or practice, and (3) that the act or practice occurred in the course of trade or commerce. *Id.*; see also *Reeder v. HSBC USA, Inc.*, 2009 WL 4788488, *11 (N.D. Ill. Dec. 8, 2009) (citing cases). A claim for damages under ICFA requires proof of actual damages proximately caused by the defendant. See 815 ILCS 505/10a(a); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006).

The statute of limitations for ICFA claims is three years. 815 ILCS 505/10(a)e. An ICFA claim accrues when "a person knows or reasonably should know of his injury and also should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 979 (Ill. 1982); *Tammerello v. Amerquest Mortg. Co.*, 2006 WL 2860936, *7 (N.D. Ill. Sept. 29, 2006). In other words, the limitations period begins to run when the fraud was discovered or could have been discovered through due diligence. *Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 963 (N.D. Ill. 2000).

As with Plaintiff's securities fraud claims, the allegedly "deceptive" or "unfair" practice occurred in April 2008, when Plaintiff was not issued shares of AEEI. In October 2008, Glassman went online and learned of the problem. Negotiations over a settlement of the dispute got underway in November 2008. All three of those dates are more than three years before Plaintiff filed this lawsuit on December 15, 2011. So, unless Plaintiff has offered a reason to delay accrual, Plaintiff's ICFA claims are time-barred.

In an attempt to save his ICFA claims, Plaintiff invokes the discovery rule. But even if the Court were to apply it, it would not make Plaintiff's ICFA claims timely: "when a statute of limitations does not begin to run until 'discovery,' the discovery referred to is merely discovery that the plaintiff has been wrongfully injured." *Fidelity Nat. Title Ins. Co. of New York v.*

*Howard Savings Bank*, 436 F.3d 836, 839 (7th Cir. 2006) (applying Illinois law) (citing *Golla v. General Motors Corp.,* 657 N.E.2d 894, 898 (Ill. 1995); *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994); *Evans v. City of Chicago,* 434 F.3d 916, 934, n. 28 (7th Cir. 2006) (Illinois law)). Plaintiff could have sued about his claimed right to AEEI shares in April 2008. Plaintiff actually knew that he was injured in October 2008. Plaintiff knew that correcting the injury without litigation was going to require "negotiation" in November 2008.

Plaintiff suggests that the discovery date for his claim is February 2009, when settlement negotiations with Defendants reached an impasse. But a settlement negotiation does not toll the limitations period. See *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 875 (7th Cir. 1997) ("the running of a limitations period is not suspended by settlement negotiations"). That is a sensible rule, for Plaintiff "could of course have filed the suit yet continued negotiating a settlement. Most suits are settled." *Id.*; see also *Batchelor v. Donovan*, 2009 WL 4173180, at *4 (N.D. Ill. Nov. 23, 2009) ("Assuming a reasonable finder of fact could conclude that [the plaintiff's] actual reason for not filing a timely complaint was that she thought settlement was possible, the law does not permit tolling in those circumstances."). Accordingly, Plaintiff's ICFA claims are time-barred.

For completeness, the Court notes that Plaintiff also declares that Glassman could not have reasonably discovered the alleged fraud until July 31, 2011. Compl. ¶ 118 ("July 31, 2011 Mr. Glassman learned from his counsel for the first time, *inter alia*, that Defendant AEEI and the other defendants had perpetrated a fraud against him. Until that time, Plaintiff had no cause to believe a fraud had been perpetrated upon him."). But that conclusion is undermined by the documents that Plaintiff attached to its complaint. Exhibit N, for instance, includes an e-mail to Glassman from November 2008 discussing a possible settlement with AEEI, and Exhibit O is a

11

draft settlement agreement dated "February __ 2009." Plaintiff cannot (and in fact does not) disavow its exhibits, and the Court will not ignore them. See *Thompson v. Ill. Dept. of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) (conflicts between a complaint and attached exhibits may be resolved in favor of the exhibits). That approach is consistent with the principle that "'determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

As an additional basis for dismissal, Defendants argue that Plaintiff lacks standing to sue under the ICFA for a fraud that was allegedly perpetuated in California by a business incorporated in Nevada. As the Seventh Circuit observed in *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009), the Illinois Supreme Court has "severely limited the extraterritorial reach of the ICFA." In particular, "the ICFA did not create a cause of action fraudulent acts that had little or no connection to the state of Illinois." *Id.* (citing *Avery*, 835 N.E.2d at 852-53). After the Illinois Supreme Court's decision in *Avery*,

> a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois. In adopting this holding, we recognize that there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts.

*Avery*, 835 N.E.2d at 853-54. The consideration in *Avery* included "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the item that was the subject of the transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions; (7) where the deceptive statements were made; (8) where payments for services where sent; and (9) where complaints

were to be directed." *The Clearing Corp. v. Fin. And Energy Exch. Ltd.*, 2010 WL 2836717, at

*6 (N.D. Ill. July 16, 2010) (citing *Avery*, 835 N.E.2d at 853-54).

Defendants argue that the sole connection to Illinois is that Plaintiff is an Illinois business

and that its president is an Illinois resident. There is no allegation that the alleged fraud was

perpetuated in Illinois and Plaintiff does not dispute that all of AEEI's corporate decisions and

communications originated in California. Even so, Plaintiff believes that the events at issue have

a sufficient connection to Illinois because settlement communications reached him in Illinois.

That, however, is not a connection with the alleged injury but with the attempt to settle the

parties' dispute. The alleged harm — the failure to recognize Plaintiff's shares of AEEI — did

not "occur primarily and substantially in Illinois." See *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp.

2d 781, 795 (N.D. Ill. 2007) (granting a motion to dismiss an ICFA claim because the only

alleged connection to Illinois was the plaintiff's residency). Thus, the Court agrees with

Defendants that the case's weak connection to Illinois provides an additional basis for dismissing

Plaintiff's ICFA claims.

### C.      Common Law Fraud (Count VI and VII)

In its complaint, Plaintiff's alleges that (1) the parties disputed Plaintiff's ownership of

shares through the April 2008 merger; (2) the parties acknowledged the dispute in October 2008;

(3) the parties entered negotiations in November 2008; and (4) the negotiations broke down in

February 2009. Plaintiff's fraud claim is not about (1), as might be expected, but about (4). In

other words, Plaintiff claims fraud based on broken settlement negotiations. For example, in

response to AEEI's motion to dismiss:

> Plaintiff specifically pled in its complaint AEEI negligently failed to account for
> its stock in the CCCX/AEEI merger (Comp. ¶¶ 69-73, 90). Plaintiff also
> specifically plead that subsequently, AEEI engaged in a fraudulent scheme to

deny and prevent plaintiff from receiving its lawful ownership of its shares (Comp. ¶¶ 123, 124, 125). * * * AEEI's fraud in preventing and denying plaintiff of its ownership of AEEI stock began in or about February, 2009, when AEEI reneged on a repurchase/settlement agreement with plaintiff * * * .

[102-1 at 10 - 11]. In paragraphs 123 – 125, Plaintiff accuses AEEI and its control persons of having "continued to fraudulently collude in 'stonewalling' Plaintiff and preventing Plaintiff from obtaining lawful ownership of the shares." Compl. ¶ 124; compl. ¶ 125 (accusing AEEI of "fraudulently stonewalling"). By "reneging," Plaintiff does not mean that Defendants breached a contract, an actual settlement agreement, but that Defendants refused to settle the dispute on Plaintiff's terms, or that Plaintiff refused to settle on the terms that AEEI offered.[2]

In response to Defendants' motions to dismiss, Plaintiff insists that he has pled the who, what, when, where, and how of the fraud as required by Rule 9(b). But if "failure to agree to the settlement that Plaintiff wanted or expected" is the "what," then Plaintiff has not alleged fraud. The elements of common law fraud are "(1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intent to induce reliance on the statement; (4) reasonable reliance upon the truth of the statement; and (5) damages resulting from that reliance." *Petrakopoulou v. DHR Int'l, Inc.*, 590 F. Supp. 2d 1013, 1016 (N.D. Ill. 2008); *Sec'y of State v. Tretiak*, 22 P.3d 1134, 1140 (Nev. 2001) (same). If parties have a dispute and know what is at issue, as in this case, contentious settlement negotiations – even negotiations that involve "stonewalling" – will not (without more) amount to fraud. As a New York court put it, "[t]he court recognizes no cause of action for 'fruitless negotiation' or 'frustration.'" *N. Triphammer Dev. Corp. v. Ithaca Associates*, 704 F. Supp. 422, 428 (S.D.N.Y. 1989) (citation omitted). In this case, that is precisely what Plaintiff has alleged: fraudulent refusal to settle on

---

[2] Plaintiff advances the same or similar theory of fraud against Defendants Brewer, Byle, and Montague (see [103-1 at 7]), Defendants Wilson and Wilson, Haglund & Paulson (AEEI's corporate counsel) (see [104-1 at 6-7]), and Defendants Weaver & Martin (the accounting firm (see [105-1 at 10-11]) (fraud through the 2008 year-end audit).

14

its terms. There was no settlement, so Plaintiff cannot allege that he was fraudulently induced or coerced into settling, and there is no allegation of extortion or duress. What *is* alleged is a serious disagreement between the parties about whether Plaintiff owns AEEI stock and, if it does, the amount of damages. And that dispute will not be resolved in this opinion. (Recall, AEEI has not moved to dismiss all the claims against it.) Plaintiff's fraud claims, however, are undermined by his own allegations and must be dismissed.

It is not inconceivable that Plaintiff could have alleged a claim of fraud related to a Defendant's failure to include Plaintiff's shares in the merger, but Plaintiff rejects that position and repeatedly claims that his injury was caused by negligence. But even if Plaintiff would have alleged fraud based on AEEI's failure to recognize its shares, those claims would be time-barred. Defendants AEEI and Brewer, Montague, and Byle argue that Nevada law — the law of the state where AEEI is incorporated — should apply to Plaintiff's common law claims. That appears to be correct: In addressing state-law claims, the Court looks to choice-of-law provisions of the forum state. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). "'Illinois follows the internal affairs doctrine as its choice-of-law principle in cases alleging impropriety of corporate governance.' *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.,* 172 F. Supp. 2d 992, 999 (N.D. Ill. 2001) (citing *Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 382–83 (7th Cir. 1990), *Paulman v. Kritzer,* 230 N.E.2d 262 (1967), and the Restatement (2d) of Conflicts of Law §§ 301–10). 'Under the internal affairs doctrine the substantive law of the state of incorporation governs.' *Id.* (citing *Heyman v. Beatrice Co.,* 1995 WL 151872 at *6 (N.D. Ill. April 3, 1995))." *Tecnitoys Juguetes, S.A. v. Distributoys.com, Inc.,* 2011 WL 2293855, *1 n. 2 (N.D. Ill. June 9, 2011). "The internal-affairs doctrine is 'a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs — matters peculiar

to the relationships among or between the corporation and its current officers, directors, and shareholders — because otherwise a corporation could be faced with conflicting demands.'" *LaPlant v. Nw. Mut. Life Ins. Co.*, 701 F.3d 1137, 1139 (7th Cir. 2012) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)).

AEEI is incorporated in Nevada, and Plaintiff does not argue that the law of a different state should apply. Under Nevada law, "[t]he statute of limitations for a fraud claim is three years from 'the discovery by the aggrieved party of the facts constituting the fraud.' NEV. REV. STAT. § 11.190(3)(d); see *Sierra Pac. Power Co. v. Nye,* 389 P.2d 387, 390 (Nev. 1964) ('mere ignorance of the existence of ... the facts which constitute the cause will not postpone the operation of the statute of limitations ... if the facts may be ascertained by inquiry or diligence')." *Brignand v. Van Wagoner Funds, Inc.*, 2009 WL 2175623, at *3 (D. Nev. July 16, 2009). In this case, Plaintiff knew that he had a dispute with AEEI in October 2008 and began negotiations to resolve the dispute in November 2008. Plaintiff sued in December 2011, more than three years later. Under Nevada law, Plaintiff's fraud claims are time-barred.

### D.     Conspiracy (Count X)

"Civil conspiracy is not an independent tort, rather there must be an independent cause of action underlying a civil conspiracy claim." *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ; *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989) ("conspiracy becomes actionable only when the underlying conduct which is the subject of the conspiracy is independently tortious"). In this case, Plaintiff alleges that Defendants "had an implicit, covert agreement to defraud Plaintiff, and to misappropriate Plaintiff's shares." Compl. ¶ 185. As explained, Plaintiff has not stated a fraud claim against

16

any Defendant who has moved to dismiss. Accordingly, Defendants' motions to dismiss Plaintiff's conspiracy claim is granted.

### E. Breach of Fiduciary Duty (Counts XI and XII)

To state a claim for breach of fiduciary duty, Plaintiff must plausibly allege that a Defendant has a fiduciary duty to it, that the duty was breached, and that the breach caused Plaintiff's injury. See *Gross v. Town of Cicero*, 619 F.3d 697, 709 (7th Cir. 2010) (Illinois law); *Stalk v. Mushkin*, 125 P.3d 838, 843 (Nev. 2009) (Nevada law). Plaintiff has alleged breach of fiduciary duty against Defendant AEEI and Defendants Brewer, Montague, and Byle. They have moved to dismiss Plaintiff's claims as barred by Nevada's three-year statute of limitations. See *Brignand*, 2009 WL 2175623, at *3 ("Under Nevada law, the statute of limitations for a breach of fiduciary duty claim is three years from the date the plaintiff 'knew or reasonably should have known facts giving rise to [the] alleged breach.'") (quoting *Shupe v. Ham*, 639 P.2d 540, 542 (Nev. 1982)). As discussed in the previous section, Plaintiff does not oppose Defendants choice-of-law argument and Plaintiff's discovery-rule arguments are unavailing. Thus, for the reasons stated in the previous sections, the Court dismisses Plaintiff's breach-of-fiduciary-duty claims as time-barred.

### F. Breach of the Duty of Good Faith and Fair Dealing (Counts XIV and XV)

Defendants Brewer, Montague, and Byle; Wilson and Wilson Haglund & Paulsen; and Weaver & Martin have moved to dismiss Plaintiff's claims for breach of the duty of good faith and fair dealing. They argue that they did not have a contract with Plaintiff and that there is no such free-floating duty without a contract. See *e.g., Cobb-Alvarez v. Union Pac. Corp.*, 962 F. Supp. 1049, 1055 (N.D. Ill. 1997) ("[The] implied covenant [of good faith and fair dealing] is

imputed into every contract under Illinois law, but a breach of good faith and fair dealing does not create an independent cause of action separate from the breach of contract claim. The implied duty is used primarily as a construction tool in determining the parties' intent; vague notions of fair dealing do not form the basis for an independent tort. Any breach of the implied covenant of good faith and fair dealing must be encompassed in the claim of breach of contract.") (internal citations omitted); see also *Racine & Laramie Ltd. v. Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1031-32 (Cal. Ct. App. 1992) (California law); *A.C. Shaw Construction, Inc. v. Washoe County*, 784 Nev. 913, 913 (Nev. 1989) (Nevada law). On this issue, Plaintiff does not respond to Defendants' motions or their supporting arguments. That is unsurprising, for the Court sees no basis for Plaintiff's claims. Defendants' motions to dismiss this claim are granted.

## G.     Negligence (Count I)

### 1.     AEEI

AEEI did not move to dismiss Plaintiff's negligence claim in its motion to dismiss or argue for dismissal in its opening brief. See [57-2 at 1]. Despite that, AEEI argues for dismissal in its reply brief, focusing on the statute of limitations. See [114 at 3]. With rare exceptions, arguments raised for the first time in a reply brief are waived and cannot be considered at the motion to dismiss stage. See *United States v. Adamson*, 441 F.3d 513, 521 n. 2 (7th Cir. 2006). Perhaps AEEI thought that Plaintiff opened the door to its argument by supporting the negligence claim in its response brief. AEEI does not make that argument, but simply argues for dismissal in reply. Because the Court believes that it would be prejudicial to Plaintiff to read its support for a claim criticized by other defendants as a response to arguments that AEEI had not

made, the Court will follow the usual rule and will not consider the arguments that AEEI made

for the first time in its reply brief.

### 2.    Brewer, Byle, and Montague

To state a claim against Defendants Brewer, Byle, and Montague for negligence, Plaintiff

must allege that those Defendants "breached a duty of care to him and caused him harm"

*Williams v. Centers for Disease Control & Prevention*, 96 F. App'x 399, 400 (7th Cir. 2004);

*Orzoff v. BAC Home Loans Servicing, LP*, 2012 WL 1681862, *2 (D. Nev. May 11, 2012)

(Nevada law).   Defendants argue that Plaintiff has not stated a claim because Plaintiff has not

alleged that Defendants owed Plaintiff a duty of care at the time when the alleged injury occurred

— in April 2008, when Plaintiff claims to have been harmed by somebody's negligence.

Plaintiff responds that "Defendants' duty to Plaintiff is factually supported in a clear manner.

(Compl ¶¶ 6, 26, 49)."   [103-1 at 6].   Remarkably, Plaintiff did not bother to summarize the

listed paragraphs.   Nevertheless, here they are:

> 6.   The Merger Plan called for each share of CCCX (now AEEI-MN) to be
> exchanged with one share of AEEI-NV, the surviving public company (Defendant
> AEEI herein).   Under Section 1.02, Plaintiff automatically, without any further
> action, became an AEEI common shareholder. Plaintiff was therefore entitled to
> receive ownership of 1,000,000 shares of Defendant AEEI's common stock as a
> result of the Merger.
>
> 26.   Defendant American Environmental Energy, Inc. ("AEEI") is a Nevada
> corporation with its principal place of business located in Houston, Texas. AEEI's
> common stock is registered with the Securities and Exchange Commission (the
> "Commission") under Section 12(g) of the Securities Exchange Act, as amended  (the
> "Exchange Act").    AEEI's common stock is traded over the counter on the "pink
> sheets" under the symbol AEEI.pk.
>
> 49.   On April18, 2008, through a series of complex corporate transactions, all
> effected on that day, CCCX was merged into AEEI was effected (the "Merger"). The
> Merger included: (a) CCCX changing its name to AEEI, a Minnesota Corporation
> ("AEEI-MN"); followed by (b) A Plan of merger of AEEI-MN (formerly CCCX) into

> Defendant American Environmental Energy, Inc. a Nevada Corporation, and the Defendant herein ("AEEI" or AEEI-NV) (the "Merger Plan"). A copy of the certificate of name change from CCCX to AEEI is attached hereto as Exhibit E. A copy of the Merger Plan and the corresponding Form 8-K is annexed hereto as Exhibit F.

Compl. ¶¶ 6, 26, 49. Those paragraphs do not mention Brewer, Montague, or Byle, so Plaintiff's idea must be that those Defendants owed Plaintiff a duty of care at the time of its injury simply by virtue of their connection with AEEI. According to Plaintiff, however, Byle was not on the board of AEEI until March 3, 2009. Compl. ¶ 30. Defendants state (and Plaintiff does not dispute) that Montague joined AEEI's board the same day. See [59-2 at 4]; [103-1 at 6]. Since Plaintiff's injury was a product of the merger, Plaintiff's failure to allege Montague and Byle had anything to do with the April 2008 merger is fatal to Plaintiff's claims against them.

As for Defendant Brewer, Plaintiff mentions him frequently, but Plaintiff also declares that Brewer was not yet an officer or board member of AEEI at the time of the merger. If he was not a director or officer of AEEI at the time of the merger, it is not clear how he could be responsible for failing to include Plaintiff's shares in the merger. That leaves Plaintiff with the theory that Brewer "negligently" failed to correct an existing problem with his shares, and should have done so before October 2008, before Plaintiff and Defendants started down their long path to resolving this dispute. But once Plaintiff made his claim on AEEI in October 2008, no theory of negligence can account for the harm to Plaintiff: it is not negligence to refuse to accede to an adverse party's demands for a settlement. Plaintiff has not alleged that, for some reason, as soon as Brewer became an AEEI officer, after April 18, 2008, a duty of care arose for him to correct the alleged problem with Plaintiff's shares and that he had breached his duty to Plaintiff by October or November of 2008, when Plaintiff sought to have the error corrected and opened settlement negotiations. Thus, as to Brewer, Montague, and Byle, Plaintiff does not describe,

and the Court does not detect, any plausible theory of negligence consistent with Plaintiff's allegations.

It is possible that Plaintiff may find it hard to articulate a viable negligence theory, or to offer any case discussing a similar theory of negligence, because the claim may be a kind of category mistake. Plaintiff is alleging purely economic injury but seeks to recover in tort. The economic loss doctrine, which bars "recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability" may be the problem. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) (Nevada law); *ARCO Products Co. v. May*, 948 P.2d 263, 266 (Nev. 1997) ("Because May's claimed damages are purely economic in nature, the district court erred in failing to dismiss May's negligence claim pursuant to the economic loss doctrine."). But the parties do not address that issue directly, so the Court will set that concern to the side at present.

The Court will also set aside the possible statute-of-limitations problem with Plaintiff's negligence claims against Defendants Brewer, Montague, and Byle. Like Defendant AEEI, Defendants Brewer, Montague, and Byle argue for the first time in their reply brief that Plaintiff's negligence claim is barred by Nevada's three-year statute of limitations. And not only do Defendants improperly raise this argument for the first time their reply, but they also fail to cite relevant authority for Nevada's statute of limitations for a negligence claim of the sort Plaintiff alleges.

### 3.    Wilson Haugland & Wilson

Defendants Wilson and Wilson Haugland & Wilson, have moved to dismiss Plaintiff's negligence claim arguing, like the others, that Plaintiff has not alleged that they had a duty to

Plaintiff related to Plaintiff's claimed injuries. Defendants believe that the nature of their relationship to Plaintiff makes that plain. Plaintiff admits that these Defendants were corporate counsel to AEEI (¶ 32), and Plaintiff acknowledges that the law firm was called on to negotiate a settlement with Plaintiff (¶ 94). But in order for an attorney to owe a duty of care to a non-client, Plaintiff needed to be the intended beneficiary of its legal advice. See *Pelham v. Griesheimer*, 440 N.E.2d 96, 99 (Ill. 1982) ("to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship). Plaintiff does not allege that Defendants intended to give him legal advice, because Defendants, as counsel for AEEI, were adverse to Plaintiff in settlement negotiations. Furthermore, [u]nder Illinois law, an attorney's representation of a corporation does not create an attorney-client relationship with the shareholders, investors, agents, and consultants of the corporation. *Barrett Industrial Trucks, Inc. v. Old Republic Ins, Co.*, 129 F.R.D. 515, 517-18 (N.D. Ill. 1990).

Plaintiff responds that "Defendants duty to plaintiff is factually supported in a clear manner. (Compl. ¶¶ 6, 27, 32, 95)." [104-1 at 6]. Again, Plaintiff does not summarize those paragraphs, so the Court turns to its complaint:

> 6. The Merger Plan called for each share of CCCX (now AEEI-MN) to be exchanged with one share of AEEI-NV, the surviving public company (Defendant AEEI herein). Under Section 1.02, Plaintiff automatically, without any further action, became an AEEI common shareholder. Plaintiff was therefore entitled to receive ownership of 1,000,000 shares of Defendant AEEI's common stock as a result of the Merger.

> 27. Defendant Christopher Wilson is a resident of California. Mr. Wilson is a licensed California attorney representing AEEI since in or about 2008. Mr.Wilson is a "control person" of AEEI, as that term is defined in the Exchange Act. Mr. Wilson controlled and directed, and continues to control and direct the fraudulent scheme against Plaintiff described herein.

32. Defendant Wilson, Haglund & Paulsen, P.C. ("WH&P") is a law firm located in Irvine, California.Wilson, Haglund & Paulsen is corporate counsel to Defendant AEEI.  Defendant Christopher Wilson is a principal in WH&P.

95. In or about the period November, 2008-February 2009, Defendants AEEI, Brewer and Wilson attempted to buy Mr. Glassman's silence concerning their recklessness in not knowing Plaintiff was a CCCX shareholder. Accordingly, during that period, these defendants attempted to get Mr. Glassman to execute a settlement and release agreement whereby AEEI promised to pay Mr. Glassman $75,000.00 to retire his shares, and maintain strict confidentiality about AEEI's negligence. Both Mr. Brewer and Mr. Wilson informed Mr. Glassman they were concerned that if AEEI's mistake in not accounting for Plaintiffs shares was disclosed and corrected, the public "float" would be greatly increased, resulting in shareholder dilution, and a decrease in AEEI's stock price. As such, both Defendants Wilson and Brewer informed Mr. Glassman they did not want to have to risk pique the ire of disgruntled shareholders, or have to deal with the Securities and Exchange Commission.

Compl. ¶¶ 6, 27, 32, 95.  Those paragraphs support Defendants' argument that Plaintiff negligence claim against them is a product of its dissatisfaction with their approach to the settlement negotiations.  The Court agrees that Plaintiff has not alleged that Defendants had a duty to Plaintiff and that therefore its negligence claim against them must be dismissed.

### 4.     Weaver & Martin

Defendant Weaver & Martin — an accounting firm employed by AEEI between 2007 and 2010 — put up a defense similar to the law firm's: Plaintiff has not alleged that it owed Plaintiff a duty of care and that, therefore, Plaintiff's negligence claim must be dismissed.  The Court agrees.  Plaintiff was not Weaver & Martin's client.  AEEI was the client.  In Illinois, for an accountant to be liable to non-client third-parties "[t]he plaintiff must show that a primary purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff."  *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 837-38 (7th Cir. 2007).  Plaintiff argues that Missouri law should apply to its claims against Weaver & Martin, a Missouri firm, but on this point, Missouri's law is substantially the same as Illinois':

"In order for an accountant to be held to a legal duty to a third party not in privity, the third party must be a known recipient or be within the limited class of persons the services were intended to benefit and guide." *Lindner Fund v. Abney*, 770 S.W.2d 437, 438 (Mo. Ct. App. 1989) (citing *Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.*, 493 S.W.2d 378, 383 (Mo.App.1973)).

Plaintiff appears to imagine that Weaver & Martin could have harmed it at two points: (1) at the time of the merger and/or (2) following the merger. Plaintiff does not explain how Weaver & Martin could possibly have a duty to Plaintiff that is any different from the duty to any other third-party shareholder. For example, in its response to Weaver & Martin's motion to dismiss, Plaintiff states:

> Surely, an experienced certified public auditor charged with auditing the financials of a public company with the SEC public disclosure obligations such as AEEI, would know that the audited financial statements it prepared for AEEI to file would know that a shareholder of its client like Gemrush would be among the class of recipients for whom its client (AEEI) intended to supply such financial information.

[105-1 at 6 n. 2]. Surely? The cases cited above explain that AEEI's accountants do not have a duty of care to *all* of AEEI's shareholders. See, *e.g.*, *Tricontinental*, 475 F.3d at 838 (for liability to a third-party, accountant needed to be aware that "a primary intent of the client was for the professional services to benefit or influence the particular person."). Plaintiff offers no reasons in its briefs to support its conclusion that the accountants intended to influence Plaintiff, it does not direct the Court to any supporting allegations in its complaint, and the Court has not found any basis for the firm's duty to Plaintiff on its own. Accordingly, Plaintiff has not put the firm on notice of how a bad audit for AEEI could conceivably make Weaver and Martin answerable to Plaintiff in tort. That is not surprising: AEEI employed Weaver & Martin, and so Weaver & Martin had a duty to its client, AEEI. If Weaver & Martin committed an error that harmed one

of AEEI's shareholders, then AEEI will be accountable. And if AEEI believes that the error was caused by its accountants' malpractice, then AEEI can seek a remedy from the accountants.

Plaintiff's negligence allegations are even less clear when focusing on Weaver & Martin's conduct after the merger. The accounting firm is alleged to have done the 2008 year-end audit. But by then Plaintiff had suffered its injury and was involved in settlement negotiations. Plaintiff does not allege that it took any action in *reliance* on the audits; they are just part of its ongoing conflict with AEEI about whether he is the rightful owner of shares and, if so, what he is owed. See *e.g.*, *Freight Train Adver., LLC v. Chicago Rail Link, LLC*, 2012 WL 5520400, at *9 (N.D. Ill. Nov. 14, 2012) ("Under Illinois law, a cause of action for negligent misrepresentation has the following elements: (1) a duty owed by the defendant to the plaintiff to communicate accurate information, (2) a false statement of material fact, (3) carelessness or negligence in ascertaining the truth of the statement by the defendant, (4) the defendant's intention to induce action by the plaintiff, (5) action by the plaintiff in reliance upon the truth of the statement, and (6) damage to the plaintiff resulting from such reliance.").

## H.     TD Ameritrade's Motion to Compel Arbitration

In 2007, Plaintiff's shares of CCCX were deposited in Plaintiff's stock brokerage account with Defendant TD Ameritrade. Plaintiff's complaint alleges one claim of negligence against TD Ameritrade for failing to "perform customary due diligence" before confirming to Plaintiff that the CCCX shares had cleared legal review and were "free trading shares." In other words, Plaintiff's theory is that if its CCCX shares were not in fact "free trading," then TD Ameritrade's statement to the contrary was a negligent misrepresentation that harmed Plaintiff. TD Ameritrade has moved to compel arbitration [117]. In the alternative, if the Court denies TD

Ameritrade's motion to compel, TD Ameritrade has asked the court to consider its motion to dismiss [120].

Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 2, embodies the "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardenga*, 546 U.S. 440, 444 (1996); *Volkswagen of America, Inc. v Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007). In this case, Plaintiff signed an account agreement with TD Ameritrade on July 13, 2007. That contract contains an arbitration clause:

> The following contains the predispute arbitration clauses applicable to my account. Through my signature on the account application, I agree to be bound as follows:
>
> a. All parties to this Agreement are giving up their right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> *****
>
> All controversies concerning (a) any transaction, (b) the construction, performance or breach of this or any other agreement, whether entered into prior to, on or after the date of this Agreement, or (c) any other matter which may arise between TD AMERITRADE . . . and me shall be determined by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc.

Plaintiff does not dispute the validity of the arbitration provision or that that Plaintiff's claim falls within its scope. Instead, Plaintiff contends that TD Ameritrade waived its right to seek arbitration by (1) waiting almost six months after being served with Plaintiff's complaint before filing its motion to compel, (2) participation in status conferences, (3) participation with Plaintiff and other Defendants in scheduling, (4) attempting to negotiate a settlement, (5) requesting extensions of time to reply to Plaintiff's complaint. In opposition to Plaintiff's list, Defendant argues that its actions clearly demonstrated that it intended to compel arbitration if the parties

could not reach a settlement. Among other things, Defendant notes that (1) at least twice it stated on the record its intent to compel arbitration if a settlement could not be reached, (2) it did not file any dispositive motions, (3) it did not engage in any formal discovery, (4) it filed its motion to compel the same month as the settlement negotiations failed.

A waiver of a contractual right to invoke arbitration can be implied or express. *Cabinetree of Wisconsin, Inc. v. Kraftmain Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). "For waiver of the right to arbitrate to be inferred, [the Court] must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). Other considerations "include whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* "[W]aiver is not lightly inferred; the strong federal policy favoring enforcement of arbitration agreements impresses upon a party asserting waiver a heavy burden." *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1442 (N.D. Ill. 1993); see also *Dickinson v. Heinold Secs., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) ("a waiver of arbitration is not lightly to be inferred").

In this case, the Court concludes that TD Ameritrade did not waive its right to compel arbitration by not moving to compel arbitration while attempting to negotiate a settlement. This is a particularly easy conclusion for the Court because TD Ameritrade never concealed its intentions. At a status hearing before Magistrate Judge Schenkier on June 13, 2012, TD Ameritrade's counsel stated:

> We don't think there is much of a claim against TD Ameritrade. We – I talked with [Plaintiff's counsel]. We also have a, I think, pretty good motion to compel arbitration based on the client agreement that the plaintiff had with us, and we're preparing that motion.

And again, at a status hearing on October 23, 2012:

27

> We have asked Judge Dow to give us until the end of sometime mid-November to either get [this case] settled against us or we can file our motion to dismiss and our motion to compel arbitration.

"Given this candidness, it is hard to see how [Plaintiff] could have believed that [TD Ameritrade] did not desire arbitration." *Kawasaki Heavy Indus., Ltd*, 660 F.3d at 996. The Court is therefore not impressed by the six month delay during settlement discussions. Without surprise to the opposing party, courts have tolerated much longer delays. See, *e.g.*, *id.* (two-year delay). Engaging in settlement negotiation is not tantamount to waiver, and even when settlement negotiations occur after lawsuit has been initiated. *See Dickinson v. Heinold Securities, Inc.* 661 F.2d 638, 641 (7th Cir. 1981) (eighteen-month settlement negotiations prior to lawsuit not sufficient to waive arbitration); *Carbajal v. Household Bank, FSB*, 2003 WL 22159473 (N.D. Ill. 2003) ("Although the delay in *Dickinson* took place prior to the filing of the lawsuit, there is nothing in the opinion that would suggest that this conclusion should not also be extended to settlement efforts after the suit has been filed especially when those efforts take place in court."). TD Ameritrade's motion to compel arbitration [117] is granted. TD Ameritrade's motion to dismiss [120] is stricken as moot.

## IV.    Conclusion

For the reasons stated above, Defendants' motions to dismiss [57, 58, 59, and 51] are granted and TD Ameritrade's Motion to compel arbitration [117] is granted.  TD Ameritrade's motion to dismiss [120] is stricken as moot.  Plaintiff is given until April 22, 2013 to file an amended complaint if Plaintiff believes, consistent with Fed. R. Civ. P. 11, that it can overcome any of the grounds for dismissal set forth above.  This case is set for further status hearing on April 25, 2013, at 9:00 a.m.

Dated: March 29, 2013                                  _____

                                                       Robert M. Dow, Jr.
                                                       United States District Judge

29