# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUPER PAWN JEWELRY & LOAN, LLC D/B/A/ GEMRUSH, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ENVIRONMENTAL ENERGY, INC., CHRISTOPHER WILSON, BRENT BREWER, JOHN MONTAGUE, STEVEN BYLE, VIRGINIA CHA, WALTER O'BRIEN, WILLIAM MCMANES, WILSON, HAGLUND & PAULSEN, P.C., RANDY DREW, ALAN SINDERMAN, QUICKSILVER STOCK TRANSFER, LLC, WEAVER & MARTIN, LLC, and TD AMERITRADE, INC., <br><br> Defendants. | Case No. 11-cv-08894 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court grants in part the Motions for Sanctions, filed by Defendant Weaver & Martin, LLC [210] and Defendants Brent Brewer, Steven Byle, Jon Montague, Christopher Wilson, and Wilson, Haglund & Paulsen, P.C. [215]. The Court directs Defendants to submit by 10/6/2014 requests for attorneys' fees consistent with the Court's Opinion, along with appropriate supporting materials. Plaintiff and J. Kevin Benjamin may submit any objections to the fees submitted by Defendants by 10/20/2014. The Court will then determine the appropriate monetary sanction for the conduct at issue.

## I.     Background and the PSLRA

Following the Court's denial of Plaintiff's motion for leave to file a third amended complaint in this case, Defendants Weaver & Martin, LLC [210] and Brent Brewer, Steven Byle,

Jon Montague, Christopher Wilson, and Wilson, Haglund & Paulsen, P.C. [215] (collectively, "Movants") filed motions for sanctions against Plaintiff Super Pawn and four of its attorneys, J. Kevin Benjamin, Seth Kaplan, Gordon Katz, and Robert Ouriel. The case has since settled and an order dismissing the case pursuant to Rule 41(a)(1)(ii) and stipulation of the parties was entered on April 17, 2014. By the terms of the settlement agreement, the motion for sanctions remained open for disposition by the Court.

Movants seek sanctions essentially on two grounds, arguing that (1) Plaintiff and its attorneys failed to conduct an adequate investigation into its claims before filing the various complaints in this case, and (2) after the Court granted Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim, Plaintiff filed second and third amended complaints, which included the same allegations that the Court had already deemed time-barred. According to Movants, Plaintiff and its attorneys violated Rule 11 in both instances. And because this case involves alleged violations of Section 10(b) of the Securities and Exchange Act of 1934, Movants argue that sanctions are not only appropriate, but mandatory.

The Private Securities Litigation Reform Act ("PSLRA") dictates that "[i]n any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). "If the court makes a finding . . . that a party or attorney violated any requirement of Rule 11(b) . . . as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11." 15 U.S.C. § 78u-4(c)(2).

If the Court identifies Rule 11 violations, the PSLRA mandates that "the court shall adopt

2

a presumption that the appropriate sanction . . . (i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) . . . is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and (ii) for substantial failure of any complaint to comply with the requirement of Rule 11(b) . . . is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A). That presumption may be rebutted, but "only upon proof by the party or attorney against whom sanctions are to be imposed that . . . (i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or (ii) the violation of Rule 11(b) . . . was de minimis." 15 U.S.C. § 78u-4(c)(3)(B). But, even if the presumption is rebutted, the Court still "shall award the sanctions that the court deems appropriate pursuant to Rule 11." 15 U.S.C. § 78u-4(c)(3)(C).

Plaintiff's suit was premised on the notion that it owned 1,000,000 shares of common stock of American Environmental Energy, Inc. ("AEEI") as a result of a complex merger that took place in April 2008. According to Plaintiff, AEEI and others wrongfully denied it those shares following the merger, first accidentally, and then, once Defendants were made aware of the oversight, intentionally and fraudulently. On that basis, Plaintiff sued AEEI, its attorney Christopher Wilson, former CEO Brent Brewer, current CEO John Montague, chairman of the board of directors Steven Byle, various other board members, former president Randy Drew, outside corporate counsel Wilson, Haglund, & Paulson, P.C., Quicksilver Stock Transfer, LLC and its owner Alan Sinderman, stock brokerage firm TD Ameritrade, and AEEI's accounting firm Weaver & Martin LLC. Plaintiff's first amended complaint alleged that, by depriving it of

shares of stock that it rightfully owned, Defendants were negligent, committed fraud, violated Section 10(b) of the Securities and Exchange Act of 1934 and the Illinois Consumer Fraud and Deceptive Business Practices Act, engaged in a conspiracy, breached a fiduciary duty to Plaintiff, and breached the duty of good faith and fair dealing. Plaintiff also accused AEEI of conversion and breach of contract.

Plaintiff, Benjamin, Kaplan, and Katz separately oppose sanctions, since each is uniquely situated with respect to Movants' allegations. Robert Ouriel did not file an opposition brief. Relevant here:

- On December 15, 2011, Benjamin filed the original complaint on Plaintiff's behalf and entered his appearance in this case.
- On February 3, 2012, Benjamin withdrew from the case, and Kaplan entered an appearance and filed an amended complaint ("the first amended complaint").
- On June 19, 2012, the Court granted attorney Robert Ouriel's *pro hac vice* motion.
- On July 9, 2012, Defendant Weaver & Martin filed a motion to dismiss the first amended complaint.
- On July 20, 2012, Defendants American Environmental Energy; Christopher Wilson and Wilson, Haglund, and Paulsen, P.C.; and Brent Brewer, John Montague, and Steven Byle filed motions to dismiss the first amended complaint.
- On August 29, 2012, Robert Ouriel filed a motion to withdraw as Plaintiff's counsel.
- On September 12, 2012, Katz filed a *pro hac vice* motion, which the Court granted.
- On October 17 and 18, 2012, Katz filed briefs in opposition to each of Defendants' motions to dismiss.
- On March 29, 2013, the Court granted each of the motions to dismiss.
- On April 22, 2013, Katz filed a motion to withdraw as counsel, which the Court granted.
- On May 21, 2013, Benjamin filed to a notice of appearance to, again, represent Plaintiff.
- On May 31, 2013, Benjamin filed a second Amended Complaint ("SAC") on behalf of Plaintiff, which re-asserted all six claims against Movants that the Court had dismissed in its March 29 Opinion.
- On June 23, 2013, Benjamin – without leave of Court – attempted to file a corrected version of the SAC, which did not name any of the Movants (except for Brewer) as Defendants.
- On June 27, 2013, Weaver & Martin filed a motion for partial summary judgment with respect to the SAC on the basis that two counts in the SAC are time-barred.
- On July 1, 2013, Weaver & Martin filed a motion to dismiss the SAC as to the other claims.
- On July 2, 2013, Benjamin attempted – again, without leave of Court – to file *another* corrected SAC, which also did not name any of the Movants (except for Brewer) as a

4

Defendant.
- On July 9, 2013, the Court struck both corrected versions, made clear that Plaintiff must file a proper motion seeking leave to file an amended complaint before doing so, and set a date by which Plaintiff would be permitted to file such a motion, if it so chose, and a date by which Defendants would need to respond.
- On July 17, 2013, Plaintiff filed a motion requesting leave to file a third amended complaint, which (like the original SAC, but unlike the two "corrected" versions) named all of the original Defendants.
- On July 24, 2013, Movants filed briefs in opposition to Plaintiff's motion.
- On August 5, 2013, the Court chastised Plaintiff for failing to attach a proposed amended complaint to its motion for leave to file it and ordered Plaintiff to do so by August 14.
- On August 15, Plaintiff filed a continuance to file its motion, which the Court granted.
- Finally, on August 29, 2013, Plaintiff filed its proposed third amended complaint, in response to which Movants filed supplemental briefs several days later.
- Finally, on September 9, 2013, the Court denied Plaintiff's request to file a third amended complaint, and ordered the parties to proceed on the claims that survived the first amended complaint, as reflected in the Court's March 29 Opinion and Order.

## II.   Analysis

### A.   Gordon Katz

Katz argues that he was not involved in the substance of the case in a way that warrants sanctions. Specifically, he argues that his substantive role as Plaintiff's counsel lasted for roughly 5 weeks, during which time he drafted a response to Defendants' motions to dismiss but never wrote or filed any other pleading. This, by itself, does not insulate Katz from sanctions, because the PSLRA requires the Court to sanction any attorney found to have violated Rule 11 through any responsive pleading. 15 U.S.C. § 78u-4(c)(1). The fact that Katz had no involvement in the case after April 2013, however, does insulate him from Defendants' accusations concerning the second and third amended complaints. Whether Katz violated Rule 11, therefore, turns solely on whether in his response brief he advanced a frivolous argument, a legal position for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or a factual contention that lacked evidentiary support. Fed. R. Civ. P. 11(b)(1)-(3).

Weaver & Martin argue that Katz violated Rule 11 by opposing its motion to dismiss, in spite of Weaver & Martin's representation in the motion that it "was not retained by AEEI, for audits or anything else, until after the merger." According to Weaver & Martin, that representation put Katz on notice of the fact that it was not involved initially in the deprivation of Plaintiff's shares, and he therefore should have dismissed the claims that sought to hold Weaver & Martin accountable for injuries caused prior to its involvement with AEEI. Likewise, Weaver & Martin point out that Katz defended claims, such as the securities fraud claim, that he should have realized were time-barred. Weaver & Martin also argue that Katz should have dismissed Plaintiff's claim alleging a breach of the duty of good faith and fair dealing "after it had been pointed out to him that there was no contract between [Plaintiff] and Weaver & Martin." Weaver & Martin also contend that Katz violated Rule 11 by opposing the dismissal of Plaintiff's allegations of fraud, conspiracy, and securities fraud, despite the fact that the first amended complaint lacked sufficient particularity to state a claim against Weaver & Martin.

Having considered the foregoing arguments and reviewed the pleadings at issue, the Court does not find Katz to have engaged in sanctionable conduct. Plaintiff's opposition brief evinces Plaintiff's and Katz's belief that, contrary to Weaver & Martin's representations, the accounting firm *was* involved in the 2008 merger. See [105-1] at 4. Moreover, Katz's brief advances a contention that Plaintiff would be entitled to relief *even if* the firm first audited AEEI's financials in 2009 (when Weaver & Martin contend it first worked for AEEI), because (according to Plaintiff) that effort necessarily facilitated any wrongdoing related to the 2008 merger. See [105-1] at 9. Katz also argued that Plaintiff could avail itself of the "discovery rule" and tolling doctrines to save the allegations that Defendants argued were time-barred. In the end, the Court rejected all of these arguments, but, based on the information before it, the

Court cannot reasonably say that Katz advanced these arguments in bad faith. Meritless is not frivolous, and – without more than Defendant's suspicion and an unsuccessful opposition brief– the Court cannot deem Katz's opposition brief to be the latter.

**B.     Seth Kaplan and Robert Ouriel**

Weaver & Martin argue that Kaplan violated Rule 11 by signing the First Amended Complaint. This was sanctionable, it argues, because a proper pre-filing investigation would have revealed that AEEI had not yet hired Weaver & Martin at the time of the merger. Had Plaintiff properly investigated its allegations prior to filing the first amended complaint, it argues, Plaintiff would have discovered that Weaver & Martin did not begin work for AEEI until 2009, months after the April 2008 merger.

Kaplan argues that he played no substantive role in the case, merely serving as local counsel for attorney Robert Ouriel. Ouriel, Kaplan insists, drafted the first amended complaint; Kaplan merely signed and filed it. Setting aside Kaplan's misconceptions about the ethical duties of local counsel, the Court cannot conclude from the face of the pleadings whether a reasonable pre-filing investigation would have turned up the exact date on which Weaver & Martin began providing services to AEEI. An engagement letter likely would have established a hard date, but the firm could have done work for AEEI even before a date on which the parties' arrangement became formal. And besides, that letter (if one exists) is something that more realistically would be obtained in the discovery phase of litigation and, later, attached to a defendant's motion for summary judgment.

At the end of the day, the Court has no legitimate reason (other than the temptations associated with hindsight, which raise more questions than answers) to doubt the sufficiency of Plaintiff's pre-filing investigation. At worst, Plaintiff assumed that because Weaver & Martin

7

prepared AEEI's 2008 financial statements, it likely was AEEI's accounting firm in 2008, when it underwent a successful and complex merger. Even then, the Court cannot conclude that Plaintiff's assumption was so patently unreasonable as to warrant sanctions under Rule 11. Moreover, as mentioned, Katz's brief in opposition to Defendant's motion to dismiss suggests that Plaintiff believed that it could prove its allegations on the theory that the accounting firm committed the same legal wrongs, even if – as Defendant contends – Weaver & Martin did not begin work for AEEI until 2009. For these reasons, the Court determines that neither Kaplan nor Ouriel violated Rule 11 when they prepared, signed, and/or filed Plaintiff's first amended complaint.

### C. J. Kevin Benjamin

Unlike Kaplan and Ouriel, Benjamin did much more than file a complaint with erroneous factual assertions. Following the Court's ruling on Defendants' motions to dismiss, Benjamin filed Plaintiff's second amended complaint, which advanced the same claims against the same Defendants as Plaintiff's first amended complaint had done. This is materially different than the conduct of Katz (who advanced meritless arguments) and Kaplan and Ouriel (who, at worst, made an incorrect assumption). Benjamin had the benefit of the Court's legal analysis concerning Plaintiff's allegations. And what's more, the Court's March 29, 2013 Opinion dismissing Plaintiff's allegations expressly permitted Plaintiff to file another amended complaint "*if* Plaintiff believe[d], consistent with Fed. R. Civ. P. 11, that it [could] overcome any of the grounds for dismissal set forth" in the Opinion. [150] at 29. Therefore, unless Plaintiff's second amended complaint made a good faith effort to plead around the legal deficiencies laid out by the Court, both Benjamin and his client defied the Court's Order and violated Rule 11 by filing a frivolous complaint.

The Court's March 29, 2013 Opinion and Order dismissed all of the claims against Movants. The Court rejected Plaintiff's securities fraud claim on the basis that "Plaintiff ha[d] not alleged violations 'in connection with the purchase or sale of any security,'" an element of a Rule 10-b5 claim. [150] at 7. The Court made abundantly clear that Plaintiff's theory that it "bought" AEEI shares when it automatically retained them in the merger was untenable under controlling law and that "losses from retention are not actionable." *Id.* In addition, the Court stated unequivocally that "*any* Rule 10-b5 claims are time-barred." *Id.* at 8 (emphasis added). Plaintiff's first amended complaint alleged that it was wrongfully denied AEEI shares on April 18, 2008 when AEEI merged. *Id.* Plaintiff admitted that it learned of this in October 2008 when it went online to obtain information about the shares and that it began negotiations with AEEI to correct the oversight the next month. *Id.* For that reason, the statute of limitations barred Plaintiff's December 15, 2011 suit, the Court held. *Id.* at 9.

For the same reasons, the Court concluded that Plaintiff's Illinois Consumer Fraud Act ("ICFA") claims were time-barred by the ICFA's three-year statute of limitations. *Id.* at 10. And the Court expressly rejected Plaintiff's attempt to avail itself of the discovery rule, leaving no doubt that "the discovery referred to is merely discovery that the plaintiff has been wrongfully injured," which occurred in October 2008. *Id.* at 10-11. The Court also noted that settlement negotiations did not toll the limitations period. *Id.* at 11. Moreover, the Court dismissed Plaintiff's ICFA claims on the grounds that Plaintiff's allegations, including those related to its settlement negotiations, stemmed from corporate decisions in California and/or did not occur in Illinois. *Id.* at 13. Therefore, the Court held, Plaintiff's status as an Illinois business and resident could not carry the day and, thus, Plaintiff's claims lacked a sufficient nexus with Illinois to fall within the statute's purview. *Id.*

The Court also determined that Plaintiff's common law fraud allegations, which it premised on its failed settlement negotiations, did not state a claim. "If parties have a dispute and know what is at issue, as in this case, contentious settlement negotiations – even that involve "stonewalling" – will not (without more) amount to fraud," the Opinion read. [150] at 14. And, like the securities fraud claims, the Court noted that any common law fraud claims relating to Defendants' failure to recognize its shares are time-barred. *Id.* at 15. With that, the Court easily dismissed the conspiracy count, premised on an alleged "implicit, covert agreement to defraud Plaintiff." *Id.* at 16.

The Court dismissed Plaintiff's breach of fiduciary duty claim against Brewer, Montague, and Byle as time-barred, again noting the inapplicability of the discovery rule to Plaintiff's allegations. *Id.* at 17. And the Court dismissed the counts against Movants that it premised on an alleged breach of the duty of good faith and fair dealing, because Plaintiff failed to allege that it had a contract with these parties, a prerequisite to such a claim. *Id.* at 17-18. Based on the allegations, "the Court [saw] no basis for Plaintiff's claims." *Id.* at 18.

With respect to Plaintiff's negligence claims, the Court determined that neither Brewer, nor Byle, nor Montague owed a duty to Plaintiff simply by virtue of their connection to AEEI. *Id.* at 20. Further, the Plaintiff alleged that all three Defendants began working at AEEI following the April 2008 merger. The Court determined that "once Plaintiff made his claim on AEEI in October 2008, no theory of negligence can account for the harm to Plaintiff: it is not negligence to refuse to accede to an adverse party's demands for settlement," and thus, there was "no plausible theory of negligence consistent with Plaintiff's allegations." *Id.* 20-21. In addition, the Court noted that the economic loss doctrine bars recovery in tort for monetary harm in negligence cases." *Id.* at 21. As for Wilson and his law firm, the Court concluded that those

10

Defendants owed no duty to Plaintiff and that its negligence claims stemmed from its dissatisfaction with their approach to settlement negotiations. *Id.* at 23. Finally, with respect to Weaver & Martin, the Court held that Defendant did not owe Plaintiff a duty of care. *Id.* AEEI, not Plaintiff, was Weaver & Martin's client. *Id.* And the Opinion made clear, an accountant is only liable to non-client third-parties if the "primary purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff." *Id.* Weaver & Martin, as AEEI's accountant, owed no duty to Plaintiff as a shareholder. *Id.*

The Court issued its 29-page Opinion on March 29, 2013. Katz filed a motion to withdraw his appearance on April 22, and Benjamin entered his appearance on May 21. Ten days later, Benjamin filed Plaintiff's second amended complaint. Despite the Court's ruling that Plaintiff failed to state a claim against Movants, the SAC includes (literally) the same twenty counts against the same exact Defendants. In fact, the SAC copied the twenty-five pages delineating the counts and their bases from Plaintiff's first amended complaint, ([7] ¶¶. 126-244), verbatim ([170] p. 113-231). The SAC does include some changes, but most (and arguably all) of the fatal deficiencies of the first amended complaint are there. Notably, although the Court dismissed Plaintiff's securities fraud, ICFA, common law fraud, and fiduciary duty claims as time-barred based on Plaintiff's admission that it discovered its injury in October 2008 and began settlement negotiations with AEEI the following month, the SAC pleads these same facts. See [170] ¶¶ 52, 57.

Benjamin did alter the SAC in ways that suggest that he was attempting to plead around the flaws of the first amended complaint. The narrative section is re-written, and, interestingly, the SAC makes several legal arguments chock-full of case citations (as discussed a bit later). Benjamin tried to work around the Court's decision with respect to the statute of limitations for

common law fraud by playing up the "material misstatements" that Defendants allegedly made as late as July 15, 2011 during the negotiation process. See, *e.g.,* [170] ¶ 68; see also ¶ 79. According to Plaintiff, these "overt acts" "constitute new discrete tortious conduct on that date." *Id.* This is one place where the Court is inclined to give Benjamin the benefit of the doubt, as the SAC does seem like a genuine attempt to cure a deficient allegation. The Court's March 29 Opinion expressly dismissed Plaintiff's common law fraud claims, because they were premised on Defendants' refusal to settle the dispute. "[N]egotiations that involve 'stonewalling' . . . will not (without more) amount to fraud." [15] at p. 14. Plaintiff added something "more" with this new allegation. Benjamin also attempted to cure the earlier complaint's deficient negligence claim with respect to Weaver & Martin by alleging that the accounting firm had a duty to Plaintiff on account of its involvement with the merger. [170] ¶ 76.

However, even giving Plaintiff and Benjamin the benefit of the doubt with respect to the common law fraud and negligence claims (and even that is a stretch), there is simply no way around the fact that the SAC advanced securities fraud and ICFA claims, as well as a breach of the duty of good faith and fair dealing, without making a good faith attempt to cure the factual deficiencies identified by the Court's March 29 opinion. Nowhere does the SAC allege that Plaintiff had a contract with Weaver & Martin, for example (which, as discussed, is a prerequisite to breach of the duty of good faith and fair dealing). With respect to the ICFA claim, the SAC includes the conclusory statement that "the harm to Plaintiff has occurred primarily in Illinois" and that the Defendants committed "continuous" fraud throughout the negotiations period. But the Court expressly determined in its Opinion that Plaintiff's residence in Illinois and its discussions and negotiations with Plaintiff in the aftermath of the merger were insufficient as a matter of law to establish the nexus with Illinois that the ICFA requires.

Most egregious was Plaintiff's complete disregard for the Court's ruling on its securities fraud claims. Instead of pleading new facts, as mentioned, Benjamin, in effect, makes an argument that *the Court's Opinion* (not the first amended complaint) was legally deficient. Attempting to refute the Court's legal conclusion that Defendants did not violate Rule 10b-5 with respect to Plaintiff because the alleged fraud was not "in connection with a purchase or sale of any security," the SAC argues that "courts in the Northern District of Illinois have utilized the fundamental change doctrine in determining whether a transaction is a purchase or a sale." [170] at p. 12 (string cite omitted). Yet all the material *factual* allegations with respect to the securities fraud claim remained unchanged. And this is not the only legal argument that Benjamin makes in the SAC. For example, he argues that "in the 7th Seventh, 'a plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint." [170] at p. 2 (citation omitted). These two arguments underscore the fact that Plaintiff's SAC intentionally advanced the same facts as those in the first amended complaint, *in spite of* the Court's prior ruling that the allegations did not state cognizable claims. Legal arguments of that nature, of course, should have been made in Plaintiff's brief in opposition to Defendants' earlier motions to dismiss, in a motion for reconsideration, or on appeal – not in an amended complaint advancing the exact claims that the Court had already deemed time-barred and/or deficient.

If the SAC's protestations and half-hearted attempts to plead additional facts were not enough to convince the Court that Benjamin filed it without regard for the holdings in the Court's March 29 Opinion, Benjamin's brief in opposition to Defendants' motion for sanctions assuredly is. In it, Benjamin represents that he "had limited time to file the [SAC], the subject matter and facts of the case were complex and thus [his] ability to do a sufficient pre-filing investigation at that time was limited." [238] at p. 7. Instead, he says, he "had to rely on his

13

client and previous pleadings of [Plaintiff's] attorney . . . for the foundation of the complaint." *Id.* Benjamin does not just suggest that he violated Rule 11, he all but explicitly says so, admitting that "that all combined to limit [his ability] to do perhaps a sufficient investigation prior to filing the [SAC]." *Id.* Astoundingly, he also admits that he did not closely read the Court's opinion until *after* filing the SAC. *Id.* (stating that after filing the SAC "Benjamin took action and took a much closer look at the March 29, 2013 dismissal order). After doing so, Benjamin says, he "attempted to take corrective action" by attempting the file the "corrected" SAC. *Id.* This helps to explain why the "corrected" versions removed Movants (except for Brewer) as Defendants. (Although, his proposed third amended complaint represented that Movants had been removed "inadvertent[ly]" and attempted to add them back in, so, the Court is at something of a loss for what to believe.)

In the end, Benjamin concedes what is fairly obvious from even just a cursory look at the SAC: that he did not closely read the Court's March 29 Opinion and/or ignored the Court's rulings and legal conclusions when filing the SAC. Indeed, he concedes in his brief that "Defendants [sic] sanction motions . . . should at best be only for the periods of time from May 30, 2013 – September 7, 2013, i.e., the time that any of the amended complaints that were actually filed." [238] at p. 12. The Court agrees.

Relevant here, Rule 11 establishes that each time an attorney presents a pleading to the court, he "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that (1) it is "not being presented for an improper purpose," (2) "the claims are warranted by existing law," and (3) "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). Rule 11 imposes on attorneys an "affirmative duty to conduct a reasonable inquiry into the fact and law before filing, and . . . the applicable

14

standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). "The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1014 (7th Cir. 2004). Thus, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Soc'y v. Office of Prof'l Emps. Int'l Union Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). "Rule 11 establishes an objective test and as [the Seventh Circuit] [has] repeatedly observed, an 'empty head but a pure heart is no defense.'" *U.S. Bank Nat' Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) (quoting *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994)).

The Court's careful analysis of the first amended complaint, the Court's ruling on Defendants' motions to dismiss it, and the SAC that Plaintiff filed two months later – in the context of the long and troubling history of this case and in light of Benjamin's own admissions in his brief – regrettably lead the Court to conclude that Benjamin offended Rule 11 in at least one, if not three, of the ways listed above. The PSLRA, therefore, requires the Court to impose sanctions. 15 U.S.C. § 78u-4(c)(2). In doing so, the Court is mindful that "[a]lthough what constitutes a 'reasonable pre-filing investigation depends on the circumstances of each case,' . . . the PSLRA requires counsel to conduct a more diligent pre-filing investigation in cases involving securities fraud than in other contexts." *City of Livonia Emps. Retirement Sys. v. Boeing Co.*, 2014 WL 4199136, at *5 (N.D. Ill. Aug. 21, 2014) (quoting *Beverly Gravel*, 908 F.2d 223, 225 (7th Cir. 1990), and citing *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008)).

Movants argue that Benjamin's SAC "substantial[ly] fail[ed] . . . to comply with . . . Rule

11(b)," such that the Court should award them all of their legal fees from the suit pursuant to 15 U.S.C. § 78u-4(c)(3)(A). But Benjamin argues that such an award would be excessive given the many moving pieces involved here, and the Court agrees. Requiring Benjamin, whose sanctionable conduct did not begin until May 31, 2013 – a year-and-a-half after the commencement of the suit and after the parties litigated motions to dismiss – would be unjust. The PSLRA thus permits the Court to "award the sanctions that the court deems appropriate pursuant to Rule 11." 15 U.S.C. § 78u-4(c)(3)(C). Here, those sanctions are the reasonable attorney fees incurred as a direct result of the filing of the SAC on May 31, 2013. The filing of the SAC, naturally, prompted Movants to prepare a defense and draft new briefs, as did Benjamin's subsequent attempts to file additional versions of the complaint. Considerations of justice and equity dictate that Benjamin be held accountable for the costs incurred by Movants, who he forced to re-defend meritless allegations without having closely read the Court's Opinion or investigating Movants' factual assertions (*i.e.,* that Movant did not have a contract with Plaintiff and that Weaver & Martin was not employed by AEEI at the time of the merger) before setting the wheels in motion.

Finally, Plaintiff Super Pawn insists that it should not be held liable for any sanctions that the Court awards, arguing that Rule 11 imposes obligations only on attorneys, not clients. Plaintiff also represents that it neither signed nor verified the pleadings in this case. The Court finds Plaintiff's contention that it never even *read* the complaint in its own lawsuit to be incredible, and the plain language in both Rule 11 and the PSLRA belie Plaintiff's contention that neither applies to it. Rule 11 expressly states that the Court "may impose an appropriate sanction on any attorney, law firm, or *party* that violated [Rule 11(b)] or is responsible for the violation." Fed. R. Civ. P. 11(c) (emphasis added). And the PSLRA requires the Court to

"include in the record specific findings regarding compliance *by each party* and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1) (emphasis added). "If the court makes a finding . . . that *a party* or attorney violated any requirement of Rule 11(b) . . . as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such *party* or attorney in accordance with Rule 11 . . . ." 15 U.S.C. § 78u-4(c)(2) (emphasis added).

Common sense forecloses Plaintiff's attempt to completely distance itself from its own lawsuit. Benjamin entered an appearance, of course, on Plaintiff's behalf, and – it can reasonably be inferred from timing alone – for the purpose of reviving its dismissed claims. In fact, in Benjamin's opposition brief, he makes clear that, upon returning to the case, he relied on his client's representations in filing the SAC. Plaintiff knew that the Court had just dismissed its claims, and, by authorizing its new attorney to refile them (and/or by hiring him to do so), Plaintiff subjected itself to certain ethical obligations – namely, to permit its attorney only to file claims brought for a proper purpose and grounded in fact based on a "reasonable inquiry under the circumstances." Fed. R. Civ. P. 11(b); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("a court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose"). The Court's March 29, 2013 Opinion (which expressly cited Rule 11 when giving Plaintiff leave to replead) should have sent a strong signal to Plaintiff concerning the untenable legal positions it advanced in its first amended complaint and, especially at that point, Plaintiff should have made additional efforts to determine whether certain factual assertions had any basis in fact. Instead, Plaintiff hired a new lawyer and authorized him (whether implicitly or

17

explicitly) to make virtually the same claims against the same parties without regard for the consequences. For that reason, justice requires that Plaintiff Super Pawn be held jointly and severally liable with its attorney Benjamin for filing the frivolous SAC. See *PaineWebber, Inc. v. Can Am Financial Group, Ltd.*, 121 F.R.D. 324, 336 (N.D. Ill. 1988) (holding client and counsel jointly and severally liable for Rule 11 sanctions where client deemed equally responsible for the conduct).

## III. Conclusion

For the reasons stated, the Court grants in part Motions for Sanctions, filed by Defendant Weaver & Martin, LLC [210] and Defendants Brent Brewer, Steven Byle, Jon Montague, Christopher Wilson, and Wilson, Haglund & Paulsen, P.C. [215]. The Court directs Defendants to submit by 10/6/2014 requests for attorneys' fees consistent with the Court's Opinion, along with appropriate supporting materials. Plaintiff and J. Kevin Benjamin may submit any objections to the fees submitted by Defendants by 10/20/2014. The Court will then determine the appropriate monetary sanction for the conduct at issue.

Dated: September 9, 2014

United States District Judge