**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUPER PAWN JEWELRY & LOAN, LLC D/B/A/ GEMRUSH, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 11-cv-08894 |
| v. | ) ) | |
| AMERICAN ENVIRONMENTAL ENERGY, INC., CHRISTOPHER WILSON, BRENT BREWER, JOHN MONTAGUE, STEVEN BYLE, VIRGINIA CHA, WALTER O'BRIEN, WILLIAM MCMANES, WILSON, HAGLUND & PAULSEN, P.C., RANDY DREW, ALAN SINDERMAN, QUICKSILVER STOCK TRANSFER, LLC, WEAVER & MARTIN, LLC, and TD AMERITRADE, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's motion to reconsider the Court's September 9, 2014 Opinion and Order [266], granting motions for sanctions filed by Weaver & Martin, LLC [210] as well as Brent Brewer, Steven Byle, Jon Montague, Christopher Wilson, and Wilson, Haglund & Paulsen, P.C. [215]. Also before the Court are Defendants' submissions documenting their requests for attorneys' fees [268, 269]. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion for reconsideration. Plaintiff shall pay $8,541.11 to Weaver & Martin and $7,632.17 to the remaining Defendants. Attorney Benjamin shall pay $25,623.33 to Weaver & Martin and $22,896.51 to the remaining Defendants.

## I. Background

### A. Motion to Reconsider

In its September 9, 2014 Opinion and Order, [266], the Court awarded sanctions against Super Pawn's attorney, J. Kevin Benjamin, because of his decision to file various versions of a second amended complaint ("SAC"). The Court had dismissed Plaintiff's first amended complaint ("FAC") against the currently moving Defendants, explaining in a twenty-nine page Opinion and Order [150] that each claim was time-barred and/or failed to state a claim because of certain factual deficiencies. It further stated that any future pleadings should address the identified deficiencies in accordance with Rule 11. Benjamin subsequently filed the same counts against the same defendants in the SAC, various versions of which he submitted without asking the Court for leave. While the SAC arguably addressed the deficiencies identified in the common law fraud and negligence claims, it disregarded the deficiencies identified in the securities fraud, ICFA, as well as breach of the duty of good faith and fair dealing claims, effectively repeating those claims despite the Court's legal analysis and warning. The Court therefore found that the filing of the SAC was sanctionable.

By way of background, Plaintiff first hired Benjamin prior to filing the original complaint. Approximately one month later, Plaintiff terminated Benjamin, first hiring Seth Kaplan, Robert Ouriel, and then Gordon Katz in his place. See [1, 3, 5, 90]. Ouriel withdrew shortly before the Court's Opinion and Order dismissing the FAC, and Kaplan withdrew shortly after it, leaving only Katz. See [148, 156]. Approximately two months after the Court dismissed the FAC, Plaintiff re-hired Benjamin as lead counsel, and Benjamin filed the SAC ten days later. See [165, 173]. Benjamin subsequently attempted to file two corrected versions of the SAC, naming different defendants, both without leave of Court. In the interim, Weaver & Martin filed

a motion for partial summary judgment and a motion to dismiss in response to the SAC. The Court struck the extraneous versions of the SAC and made clear that Plaintiff must file a proper motion seeking leave to file an amended complaint. Plaintiff then requested leave to file a third amended complaint ("TAC"), naming all of the Defendants but failing to attach the proposed amended complaint. Plaintiff subsequently filed its proposed TAC, in response to which the movants for sanctions filed supplemental briefs. The Court denied Plaintiff's request to file a TAC and ordered the parties to proceed on the claims that survived the FAC. Defendants then moved for sanctions.

In their original briefs opposing sanctions, Plaintiff and Benjamin essentially pointed the finger at each other. Plaintiff claimed that the filing of the SAC was a tactical decision made by Benjamin; Benjamin claimed that he had to rely on his client and previous pleadings for the foundation of the complaint, given the ten-day crunch. Unpersuaded, the Court found Plaintiff jointly and severally liable for sanctions imposed against Benjamin. It explained:

> Plaintiff knew that the Court had just dismissed its claims, and, by authorizing its new attorney to refile them (and/or by hiring him to do so), Plaintiff subjected itself to certain ethical obligations – namely, to permit its attorney only to file claims brought for a proper purpose and grounded in fact based on a "reasonable inquiry under the circumstances." Fed. R. Civ. P. 11(b); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("a court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose"). The Court's March 29, 2013 Opinion (which expressly cited Rule 11 when giving Plaintiff leave to replead) should have sent a strong signal to Plaintiff concerning the untenable legal positions it advanced in its first amended complaint and, especially at that point, Plaintiff should have made additional efforts to determine whether certain factual assertions had any basis in fact. Instead, Plaintiff hired a new lawyer and authorized him (whether implicitly or explicitly) to make virtually the same claims against the same parties without regard for the consequences. For that reason, justice requires that Plaintiff Super Pawn be held jointly and severally liable with its attorney Benjamin for filing the frivolous SAC.

3

[266] at 17-18.[1]  Having found a violation of Federal Rule of Civil Procedure 11(b), the Court was required to impose sanctions under the Private Securities Litigation Reform Act ("PSLRA") in accordance with Rule 11.  See 15 U.S.C. § 78u-4(c)(2).  The Court ruled that it would impose sanctions equal to the reasonable attorney fees incurred as a direct result of the filing of the SAC, requesting fee petitions from the Defendants now moving for reconsideration.

## B.      Fee Petitions

### 1.      Weaver & Martin

Defendant Weaver & Martin seeks $56,940.61 for its defense against the SAC and pursuit of sanctions.  In support of its petition, it has submitted a declaration of David Gustman, its lead attorney from Freeborn & Peters.  Gustman states that his firm billed Weaver & Martin for reviewing the SAC; drafting a motion to dismiss; drafting motions for sanctions, reviewing and researching Plaintiff's "corrected" SAC; drafting a motion for sanctions in response to the SAC; drafting a partial motion for summary judgment and Rule 56.1 statement; reviewing, researching and responding to Plaintiff's motion for leave to file a third amended complaint; responding to Plaintiff's threat to file a motion for sanctions; and attending hearings related to the various amended complaints.  Gustman stated that his standard hourly rate was $710, that he only charged $495 in this case, and that he applied the discount in calculating reasonable fees. He further stated that the junior partner on the case billed hourly rates ranging from $395 to $415.  He attached copies of the bills submitted to his client, representing professional fees and out-of-pocket expenses submitted in invoices to the client.  He deducted 30% of the sanction-related expenses because some of those expenses related to filings by Plaintiff's other attorneys, whom the Court declined to sanction.  Weaver & Martin actually paid all but the last invoice.

---

[1] While the Court may sanction Plaintiff's attorney for violating any of Rule 11(b) (1), (2), and (3), the Court clarifies that it imposes monetary sanctions against Plaintiff under Rule 11(b)(1) and (3).

### 2. Remaining Defendants

The remaining Defendants seek $50,881.25 for their defense against the SAC and pursuit of sanctions. Their attorney, Christopher Wilson of Wilson & Oskam, attaches invoices related to reviewing the SAC; preparing a motion to dismiss; reviewing the filings of other Defendants in response to the SAC; reviewing Plaintiff's TAC; responding to Plaintiff's motion to amend its pleadings; and preparing a motion for sanctions. Wilson states that his firm charged its clients hourly rates ranging between $220 and $450. The clients' fee petition excludes expenses related to pursuing sanctions against Plaintiff's other attorneys, whom the Court declined to sanction.

## II. Legal Standard

### A. Motion to Reconsider

It is well-established that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation and internal quotation marks omitted); see also *Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) ("Reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing."); *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale

disregard, misapplication, or failure to recognize controlling precedent.'"). And with respect to the second prong, the Seventh Circuit has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191 (citation and internal quotation marks omitted). Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.* Lastly, because the Court has not entered a final judgment, Rule 60(b), not Rule 59(e) governs. Although Rule 60(b) includes a catch-all provision, permitting courts to relieve a party from a final judgment for any reason that justifies relief, "relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (citation and internal quotation marks omitted).

### B. Motion for Sanctions

Rule 11 establishes that each time an attorney presents a pleading to the court, he "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that (1) it is "not being presented for an improper purpose," (2) "the claims are warranted by existing law," and (3) "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). A court may impose sanctions not only on an attorney but also "on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose. In particular, a frivolous argument or claim is one that is 'baseless and made without a reasonable and competent inquiry.'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). In determining whether to impose sanctions, a court "must undertake an objective inquiry into whether the party or his

counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citations and internal quotation marks omitted).

In addition, the PSLRA provides that "[i]n any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). It further states that "[i]f the court makes a finding * * * that a party or attorney violated any requirement of Rule 11(b) * * * as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11." 15 U.S.C. § 78u-4(c)(2). In doing so, the Court is mindful that "[a]lthough what constitutes a 'reasonable pre-filing investigation depends on the circumstances of each case,' * * * the PSLRA requires counsel to conduct a more diligent pre-filing investigation in cases involving securities fraud than in other contexts." *City of Livonia Emps. Retirement Sys. v. Boeing Co.*, 2014 WL 4199136, at *5 (N.D. Ill. Aug. 21, 2014) (quoting *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir. 1990) and citing *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008)).

## III.    Analysis

### A.    Motion for Reconsideration

Plaintiff moves the Court to reconsider only one aspect of its Opinion and Order—its decision finding Plaintiff jointly and severally liable for sanctions imposed against Benjamin. More specifically, Plaintiff moves the Court to reconsider on two grounds. First, it argues that Benjamin, not Plaintiff, is to blame for filing the SAC. Second, Plaintiff argues that a settlement

agreement filed in April 2014 proves that Plaintiff's claim had merit. Neither of these arguments is fully persuasive.

In first arguing that Benjamin is to blame for the SAC, Plaintiff claims not to have understood that the SAC repeated most of the FAC's deficiencies. It argues that "holding a layperson client, Super Pawn, to the same objective standard of reasonable inquiry into the facts and law in a complex, arcane securities law litigation peppered with complicated civil procedure issues, would not merely be unfair, it would be absurd." Mot. for Recon. at 2. The Court is largely unpersuaded.

To begin with, Plaintiff's pattern of hiring and firing lawyers belies its contention that it unwittingly committed sanctionable conduct at the misdirection of its more sophisticated lawyer. The facts indicate that Plaintiff was aware of the Court's rulings and that it directed its lawyers accordingly. More specifically, Plaintiff hired Benjamin and then terminated him shortly after filing the original complaint. After the Court dismissed the FAC, one of Plaintiff's attorneys withdrew, and Plaintiff re-hired Benjamin as lead counsel. Benjamin filed the SAC only ten days later.

The timing of these decisions—in particular, the choice to re-hire Benjamin as lead counsel after the FAC was dismissed and just before the SAC was filed—suggests that Plaintiff was aware of the Court's ruling and involved in Benjamin's decision to file the SAC. Although Plaintiff describes itself as obliviously wandering its way into sanctionable conduct, the facts make clear that Plaintiff controlled its lawyers. At the very least, even if Plaintiff did not direct Benjamin to file the SAC, Plaintiff likely understood that he planned to file it. When Plaintiff re-hired Benjamin, they presumably discussed how the litigation had developed since he withdrew, why the Court had dismissed their claims, and what Benjamin could offer by way of strategy

moving forward. When a self-interested paying client re-hires a lawyer after its FAC is dismissed, it strains credulity to suggest that the client failed to discuss the problem with the FAC and how the lawyer proposed to address it.

But even giving Plaintiff the benefit of the doubt—that is, even assuming it failed to have this discussion with its lawyer—Plaintiff still committed sanctionable conduct. More specifically, it closed its eyes to the Court's rulings and implicitly allowed its lawyer to file sanctionable complaints flouting the Court's orders. When the Court dismissed Plaintiff's FAC, Plaintiff should have attempted to learn why. If it didn't understand the opinion, it should have asked its lawyer to explain it. At that point, it would have realized the futility of filing the same claims. Instead, Plaintiff authorized its lawyer to file claims already found factually deficient and time-barred by the Court, despite the Court's order to address the identified deficiencies in any future pleadings. A party may not hand a complaint to the Court, cover its eyes and ears, and then throw up its hands when the Court imposes sanctions, claiming it didn't understand the Court's order. This is especially true where, as here, the sanctionable conduct did not involve any nuances of federal securities law; rather, the principal delict was the refiling of a complaint that failed to address previously identified deficiencies. Rule 11 requires more, as does the PSLRA.

Plaintiff also argues for reconsideration on the basis of the parties' settlement agreement. Plaintiff and Benjamin argue that the settlement proves the merit of Plaintiff's case because it provided Plaintiff exactly what it sought in the litigation: the transfer of 1.5 million shares of AEEI stock. They argue that Defendants should have transferred the stock in the first instance rather than dragging the parties through years of litigation. The Court imposes sanctions despite this argument for several reasons. First, the settlement agreement is only with two Defendants.

Second, it expressly includes a "No Acknowledgement of Fault" provision. Third, a settlement offer may be a poor measure of merit as it "may be motivated by a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408 Advisory Committee note. Settlement terms may also reflect the resources of the parties and their determinations of the cost-effectiveness of continued litigation more than actual merit. Here, the Court is unaware of why the parties settled, why they chose particular terms, or what the current value of the stock is, so it declines to use the settlement agreement as a measure of merit. Fourth, and most importantly, the question is not whether Plaintiff was entitled to the stock but whether the filing of the SAC was sanctionable. Even assuming that some of Plaintiff's claims had merit, the Court found that certain claims were improperly pled and/or time-barred. The Court ordered Plaintiff to address any deficiencies identified by the Court in future pleadings consistent with Rule 11, but Plaintiff and Benjamin instead chose to file a redundantly defective SAC. Merits aside, their choice of litigation tactic was sanctionable.

### B.    Value of the Sanctions

Under Rule 11, a sanction must be limited to "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). A district court enjoys broad discretion in setting a sanction award that promotes deterrence. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003). A deterrent monetary sanction may include "all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4); *Divane*, 319 F.3d at 314. In assessing reasonable attorney's fees under Rule 11, a court may use the lodestar method, meaning "a computation of the number of reasonable hours expended multiplied by a reasonable hourly rate." See *Divane*, 319 F.3d at 318 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The reasonableness of an attorney's

hourly rate is determined by the market rate of the services rendered. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). It is presumptively appropriate to use an attorney's true billing rate as his or her market rate, *id.*, and the best evidence of whether an attorney's fees are reasonable is whether the party has paid them. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008). Once a reasonable hourly rate is determined, the Court must then analyze the number of hours expended. *Hensley*, 461 U.S. at 433. "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). After multiplying the reasonable hours by a reasonable rate, a court may adjust the fee award upward or downward, depending on a variety of factors, see *Shales*, 2007 WL 2274664, at *1 (citing *Hensley*, 461 U.S. at 430 n.3), and "retains a great deal of discretion" in doing so, *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1167 (7th Cir. 1997). Lastly, in applying a lodestar analysis, a court need not perform a line-by-line review of a fee petition. See *Shales*, 2007 WL 2274664, at *1 (citing *Divane*, 319 F.3d at 317); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application").

Defendants collectively petition for $107,821.86. Weaver & Martin petitions for $56,940.61, or 52.81% of the total, and the remaining Defendants petition for $50,881.25, or 47.19%. Plaintiff and Benjamin raise various arguments in response, none of which are persuasive. First, they argue that awarding these attorney's fees would provide a compensatory remedy rather than a deterrent punishment. As Rule 11 and Seventh Circuit precedent make clear, however, imposing reasonable attorney's fees is itself a deterrent, Fed. R. Civ. P. 11(c)(4); *Divane*, 319 F.3d at 314; by forcing an attorney to internalize the costs of his sanctionable

conduct, these sanctions deter similar conduct. Second, they argue that Wilson & Oskam have unreasonably requested more money than Freeborn Peters, which Benjamin characterizes as a more established and experienced law firm. However, it is presumptively appropriate to use an attorney's actual billing rate. *People Who Care*, 90 F.3d at 1310. Third, they argue that some of the hours spent were in response to gratuitous filings, which the Court later told Defendants not to spend time addressing. At some point in the tortuous procedural history of this case, the Court did clarify which of the FAC, the three SACs, and the TAC the Defendants should consider operative. Even so, Defendants' counsel reasonably spent time reviewing, researching and developing responses to the extraneous complaints at the time they were filed. The reality is that responsible attorneys promptly review whatever comes in the door—whether or not a Court later strikes it. The need to review such extraneous filings is precisely one of the reasons that courts impose sanctions for vexatious pleadings, of which the defective SAC is an example.

Although the Court is unpersuaded by each of these arguments, it declines to award the full $107,821.86. The Court previously found that, giving Benjamin and Plaintiff the benefit of the doubt, they attempted to cure the earlier complaint's (i) common law fraud and (ii) negligence claims but not the (iii) securities fraud claims, (iv) ICFA claims, or (v) breach of the duty of good faith and fair dealing claims. Accordingly, the Court discounts the $107,821.86 by two-fifths, arriving at $64,693.12. From there, the Court adjusts its previous ruling finding Plaintiff jointly and severally liable, finding that, although Plaintiff is culpable, the ultimate responsibility for filing redundantly defective claims rests more with counsel than the client. Accordingly, the Court finds Plaintiff responsible for 25% of $64,693.12, or $16,173.28. It finds Benjamin responsible for 75% of $64,693.12, or $48,519.84. Applying the percentage breakdowns supplied by Defendants (52.81% to Weaver & Martin and 47.19% to the remaining

Defendants), the Court orders Plaintiff to pay $8,541.11 to Weaver & Martin and $7,632.17 to the remaining Defendants. Applying the same percentage breakdown in Benjamin's case, it orders Benjamin to pay $25,623.33 to Weaver & Martin and $22,896.51 to the remaining Defendants.

## IV.    Conclusion

For the reasons stated above, the Court grants in part and denies in part Plaintiff's motion for reconsideration. Plaintiff shall pay $8,541.11 to Weaver & Martin and $7,632.17 to the remaining Defendants. Attorney Benjamin shall pay $25,623.33 to Weaver & Martin and $22,896.51 to the remaining Defendants.


Dated: April 16, 2015

_____
Robert M. Dow, Jr.
United States District Judge